**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2009

No. 08-40793

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE PABLO ROMERO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-375

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Jose Pablo Romero was convicted by a jury of conspiracy to possess with intent to distribute, possession with intent to distribute, and importing into the United States more than 100 grams of heroin. On appeal, he challenges his conviction by raising four issues. Because none of his challenges is meritorious, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEDURAL HISTORY

On March 18, 2008, a grand jury returned a three-count indictment against Jose Pablo Romero stemming from his transport of heroin from Mexico into the United States. Count I charged him with knowingly and intentionally conspiring to possess with the intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(B), 841(a)(1), and 846. Count Two charged him with knowingly and intentionally possessing with the intent to distribute that heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count Three charged him with knowingly and intentionally importing that heroin into the United States, in violation of 21 U.S.C. §§ 952(a) and 960(b)(2)(A).

The government tried its case against Romero before a jury on May 21 and 22, 2008. At trial, evidence showed that Romero was a passenger on a bus belonging to his employer, Transporte Pegasos. The bus entered the United States in Laredo, Texas, where Customs and Border Protection agents inspected its passengers and their luggage. An agent discovered a shoe box containing a pair of black boots inside Romero's duffel bag. The sole of each boot contained a bundle of heroin. The total weight of the heroin was 747.4 grams.

Under questioning, Romero told three inconsistent stories about the boots' destination. He first claimed that he was delivering them to a friend; he then stated that he was taking them to his cousin; and, finally, during an interview with Immigration and Customs Enforcement officers, he declared that he was transporting them to Transporte Pegasos's Dallas office as part of its parcel business.

At trial, Romero maintained that the third iteration was correct and that he never made the other statements. He testified that his company received fifteen dollars to ship the boots from Mexico and deliver them to the Dallas office. Romero claimed that his fifteen-year-old daughter, who helped run the

2

office in Comonfort, Guanajuato, Mexico, had received the boots in the morning of the day in question. At trial, his daughter corroborated his testimony. She testified that the packages were "from Juan for Sergio, and that they were to be sent to Fort Worth–Dallas." When Romero arrived at the office later that afternoon, the boots were already there, and he inspected them. The shoe box lacked packing materials, was not labeled with origin or delivery destination, and did not identify the sender or the recipient. Miguel Ramirez-Hernandez, Transporte Pegasos's owner, disputed Romero's story by testifying that he was not expecting Romero in Dallas and that Transporte Pegasos's did not conduct a parcel delivery service. Romero nonetheless denied any knowledge that there was heroin in the boots and testified that he did not make any arrangements with anyone to bring drugs into the United States.

After Romero testified, he presented a character witness, his neighbor Jose Alfonso Lopez. Lopez had known Romero for thirty-five to forty years and was an employee of Transportes Juventino Rosas, a bus company and parcel service owned by Carlos Cuellar that was Romero's former employer. Lopez testified that he knew Romero well and that Romero had a reputation as a "law-abiding person." As discussed in greater detail below, the prosecutor then cross-examined Lopez about whether he had heard that, during the course of his employment with Transportes Juventino Rosas, Romero sent extra packages to Mexico and pocketed the extra money without the company's permission. Lopez denied knowledge of this misconduct. On redirect examination, Lopez reaffirmed that he had not heard of the incidents and that the incidents did not change his testimony about Romero. The district court, however, did not permit him to testify about his knowledge of the truth or falsity of the allegations, Cuellar's distrust of his employees, or why Romero left his prior employment. Romero's counsel later attempted to recall Romero to the stand to testify

regarding the incidents in question and the reasons for his departure from Transportes Juventino Rosas. The district court similarly denied the request.

After closing arguments, the prosecutor sought and Romero's counsel opposed a jury instruction on deliberate ignorance. The district heard arguments from both parties, decided to include the requested instruction, and overruled Romero's objection to its form. The jury heard the instructions, deliberated, and returned a verdict of guilty on each count. The district court entered a judgment of conviction on August 15, 2008; sentenced Romero to 123 months' incarceration and five years' supervised release; and imposed a $300 special assessment.

Romero timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Cross-examination of reputation witness about specific instances of prior misconduct

Romero first argues that the district court erred by permitting the prosecutor to impeach Lopez regarding specific instances of Romero's prior misconduct. Lopez testified that Romero had a reputation as a "law-abiding person." During cross-examination, the prosecutor and Lopez engaged in the following exchange:

> Q    And did you know that [Romero] previously worked for a bus company? You were talking about the bus there is called Cuellar; is that correct?
> A    Yes.
> Q    Did you know or are you aware that [Romero] was sending extra packages from Dallas to Mexico?
> [Objection and sidebar; objection overruled[1]]

---

[1] Romero's counsel objected to the lack of foundation for and hearsay nature of the questions. During sidebar, the prosecutor proffered that Cuellar caught Romero sending extra packages from the United States to Mexico and pocketing the money. The district court overruled the objection because "when you ask[ed] as to [Romero's] reputation you opened that door."

Q      The question was:   Did you know that the defendant was
       sending extra packages from Dallas to Mexico without his
       boss knowing about it?
A      I didn't know.
Q      Did you know that he was then pocketing the money he was
       getting from those extra packages?
       [Objection and sidebar; objection overruled[2]]
Q      Okay.  Sir, let me ask the question again.  Did you know that
       he was pocketing the money without giving it to his boss?
A      No.

The district court did not abuse its discretion when it permitted this questioning. We initially reiterate that the trial judge "is vested with very wide discretion as to the scope of testimony of witnesses on reputation and especially wide discretion to prevent having the trial of the accused be diverted into a collateral inquiry by the efforts at impeachment and subsequent efforts to rehabilitate the reputation witness." *Shimon v. United States*, 352 F.2d 449, 453 (D.C. Cir. 1965); *see also Michelson v. United States*, 335 U.S. 469, 480 (1948) ("Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject.").[3]

---

[2] Romero's counsel offered a speaking objection that the allegation was made by Cuellar, that it was not a conviction, that it was not a proven fact, and that there was no police or incident report.  At sidebar, the district court overruled the objection and admonished defense counsel for arguing to the jury during an objection.

[3] The government asks us to review this issue for plain error.  *See United States v. Olano*, 507 U.S. 725, 730–37 (1993).  Although Romero clearly objected and the district court overruled his objections to the questions about his prior misconduct, the record does not reveal that Romero raised or preserved the challenge presented on appeal—that the prior misconduct was not relevant to the character trait at issue at trial.  Because the government prevails under either standard, we will assume, without deciding, that the challenge was preserved and thus will review for abuse of discretion.

Under Rule 405(a) of the Federal Rules of Evidence, cross-examination of a witness offering evidence of the defendant's reputation (commonly referred to as character evidence) can include "Have you heard?" questions regarding relevant, specific instances of the defendant's conduct.[4] *See, e.g.*, *United States v. Wells*, 525 F.2d 974, 976 (5th Cir. 1976) ("Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony."). The point of such questions is "to determine the credibility and accuracy of [the character witness's] testimony." *Aaron v. United States*, 397 F.2d 584, 585 (5th Cir. 1968). There are two limitations to this type of cross-examination. First, the prosecution must have a good faith factual basis for the prior bad act or misconduct. Second, the incidents must be relevant to the defendant's character traits that are at issue in the trial. *Michelson*, 335 U.S. at 481 n.18; *United States v. Nixon*, 777 F.2d 958, 970 (5th Cir. 1985); *Wells*, 525 F.2d at 977; *Aaron*, 397 F.2d at 585.

Romero concedes that the government had a good faith factual basis for probing Lopez on the prior misconduct but argues that the specific incidents are not relevant to character traits at issue in the trial. This argument lacks merit. The alleged incidents constituted prior unlawful conduct, thus testing the credibility and accuracy of Lopez's knowledge of Romero's reputation as a law-abiding person—the character trait that Romero put on trial by having Lopez testify. *See Michelson*, 335 U.S. at 479 ("[The government] may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and

---

[4] Although the relevant questions in this case were phrased in the impermissible "Did you know?" form, the defendant did not object to the phrasing of the questions and has not raised the issue on appeal.

speculate."). Furthermore, the record shows that the prosecutor's questioning was narrow. He used the prior misconduct only to impeach Lopez's testimony—he did not overly emphasize the facts of those incidents and did not rely on them in his closing argument, asking the jury only to weigh how well Lopez knew Romero. *Cf. Shimon*, 352 F.2d at 454 (concluding that it was improper for the government to "go out of [its] way" to describe the prior activities).

Romero's prior misconduct was also not so dissimilar to the charged crimes as to contravene existing precedent.[5] *Cf. Aaron*, 397 F.2d at 585 (in a trial for bank fraud, cross-examination of character witness about an illicit affair was impermissible where character witness testified to defendant's honesty and fair-dealing). As the Supreme Court explained in *Michelson*:

> The good character which the defendant had sought to establish was broader than the crime charged and included the traits of 'honesty and truthfulness' and 'being a law-abiding citizen.' . . . The crimes may be unlike, but both alike proceed from the same defects of character which the witnesses said this defendant was reputed not to exhibit. It is not only by comparison with the crime on trial but by comparison with the reputation asserted that a court may judge whether the prior arrest should be made subject of inquiry.

335 U.S. at 483–84. The prior incidents in this case involved conduct that was not so remote as to call into question the district court's exercise of its discretion. *See Salgado v. United States*, 278 F.2d 830, 833 (1st Cir. 1960) ("The kind of character which may be shown calls for a matter of judgment as to its relevancy."). Thus, the district court did not abuse its discretion.

---

[5] In fact, the district court concluded that Romero's misconduct was sufficiently similar to permit an inference of a pattern of behavior that was admissible to show knowledge and absence of mistake in accordance with Rule 404(b) of the Federal Rules of Evidence. The prosecutor chose not to pursue that line of evidence at trial.

**B. Denial of opportunity to proffer evidence regarding prior instances used during cross-examination of reputation witness**

Romero next argues that the district court erred by sustaining objections during his attorney's redirect examination of Lopez and by denying Romero the opportunity to testify a second time. During Lopez's redirect examination, the district court sustained the prosecutor's objections to questioning about whether the allegations of Romero's misconduct were true or false, why Romero left Transportes Juventino Rosas, and the rate of employee turnover at that company (which ostensibly reflected Cuellar's distrust of his employees). The district court explained (1) that Lopez testified that he did not know anything about the allegations, thus he could not verify their truth or falsity; (2) that Romero's departure was not raised on cross-examination, thus it was beyond the permissible scope of redirect; and (3) that "Cuellar is not the issue here," thus his distrust of Romero or his other employees was not relevant. The district court also denied Romero's counsel's request to recall Romero to testify about the alleged misconduct and about his departure from Transportes Juventino Rosas. The court denied the request for numerous reasons, particularly because the incidents and reasons for his departure from Transportes Juventino Rosas were not relevant.

We review for an abuse of discretion the district court's rulings on evidentiary matters such as whether to sustain or overrule an objection or to permit a party to recall a witness. *See United States v. Masat*, 948 F.2d 923, 933 (5th Cir. 1991) ("The district court has wide discretion in determining the relevance and materiality of evidence."); *Johnson v. United States*, 207 F.2d 314, 322 (5th Cir. 1953) ("The order in which evidence is to be received, the recalling of witnesses to the witness stand . . . and the acceptance or rejection of rebuttal testimony are matters which are necessarily committed to the broad discretion of the trial court, the exercise of which will not be disturbed upon appeal in the

absence of a clear showing of abuse."). In this case, the district court did not abuse its discretion.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Scheffer*, 523 U.S. 303, 329 n. 16 (1998) (Stevens, J., dissenting) (quotation marks and citations omitted). It, however, does not grant the defendant a right to present evidence that is cumulative, confusing, harassing, prejudicial, or only marginally relevant. *See Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005); *see also United States v. Mizell*, 88 F.3d 288, 294 (5th Cir. 1996) (noting that a defendant's right to call witnesses "is limited and must be weighed against the . . . 'interest in the fair and efficient administration of justice[] and the potential prejudice to the truth-determining function of the trial process.'" (first alteration in original) (quoting *Taylor v. Illinois*, 484 U.S. 400, 414–15 (1988)). In this case, the information that Romero's counsel sought to elucidate on redirect of Lopez lacked proper foundation, was not relevant, or had not been raised on cross-examination. Because Lopez admitted that he had not heard about Romero's misconduct, redirect questioning about that misconduct lacked any foundation. Furthermore, Lopez's opinion about Cuellar's disposition was undoubtedly a collateral issue. And, the prosecutor did not question Lopez about Romero's departure from Transportes Juventino Rosas, thus any questioning on the issue for the first time on redirect was impermissible. The district court did not abuse its discretion in sustaining the prosecutor's objections.

The district court also did not abuse its discretion by denying Romero's counsel's request to recall Romero to the stand. The district court's exercise of its discretion was consistent with our precedent. For example, in *United States v. James*, 510 F.2d 546 (5th Cir. 1975), we held that the district court did not abuse its discretion in denying the defendant the opportunity to recall a witness even where a subsequent witness "gave a slightly different account of the

occurrences;" this was particularly so for a "point of limited significance." *Id*. at 551; *see also Masat*, 948 F.2d at 933 (holding that the district court did not abuse its discretion by denying the defendant an opportunity to recall a witness who had already testified and been subject to cross-examination).[6] Here, the proposed testimony was even less relevant because it would not have contradicted or clarified any substantial testimony. Defense counsel sought to recall Romero to testify regarding the incidents that the prosecutor used to cross-examine Lopez's knowledge of Romero's reputation and regarding his departure from Transportes Juventino Rosas. Yet, when Lopez admitted he had not heard of Romero's prior misconduct, the impeachment was complete, and clarifying the substance of the incidents or the events surrounding Romero's departure from Transportes Juventino Rosas would not serve to rehabilitate Lopez. Moreover, the government notified Romero that it intended to present evidence of his prior misconduct, so the use of those events to cross-examine Lopez was not surprising to Romero. Similarly, the prosecutor did not elucidate any information about Romero's departure from Transportes Juventino Rosas, so no "rebuttal"

---

[6] None of the cases cited by Romero compels the conclusion that the district court abused its discretion in denying Romero's recall to testify about collateral matters. *See United States v. Parker*, 73 F.3d 48, 53–54 (5th Cir. 1996) (reversing the district court's denial of motion to reopen a case to permit the defendant to recall a witness to testify that an eyewitness admitted that the gun that the perpetrator possessed could have been a toy gun *because the testimony refuted the only disputed element*), *reh'g granted and op. vacated by* 80 F.3d 1042 (5th Cir. 1996) (en banc), *relevant portions of op. reinstated by* 104 F.3d 72 (5th Cir. 1997) (en banc); *United States v. Farmer*, 923 F.2d 1557, 1568–69 (11th Cir. 1991) (affirming the district court's refusal to permit the use of a prior misdemeanor theft *because the theft was not probative of the witness's veracity*); *United States v. Portis*, 542 F.2d 414, 417–18 (7th Cir. 1976) (reversing the district court's denial of surrebuttal testimony by the defendant's expert regarding the defense of insanity *because it was necessary for the government's expert to first testify before the defense expert could give an impeaching opinion*); *Shimon*, 352 F.2d at 453–55 (permitting a character witness to testify about the criminal charges that the prosecutor used to impeach his testimony about defendant's reputation *because the witness stated that he had heard of those charges and that they did not alter the defendant's reputation*); *State v. Reynolds*, 931 P.2d 94, 97–98 (Or. 1997) (reversing district court's denial of surrebuttal testimony as to defendant's truthfulness *because defendant's testimony had made his credibility a central issue in the case*).

testimony was necessary on that issue. The testimony proposed by Romero's counsel was otherwise collateral or only minimally relevant; thus, the district court did not abuse its discretion by forestalling the trial of those issues.[7]

Overall, then, the district court did not abuse its discretion in its decisions on the evidentiary issues that Romero now appeals.

## C. Deliberate ignorance jury instruction

Romero separately contends that the district court erred by instructing the jury on deliberate ignorance.[8] Romero argues both that the evidence did not warrant the submission of any deliberate ignorance instruction to the jury and that the instruction itself was incorrect. The second contention is without foundation[9]; thus, we will focus our analysis on the first contention. "We review

---

[7] Romero also seeks relief under the Federal Rules of Evidence. Evidence Rule 806 provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

Romero admits that "the hearsay allegations used by the prosecutor in his cross-examination of Mr. Lopez were technically not admitted into evidence"; thus, Rule 806 does not apply. Romero's reference to Evidence Rule 402—which states in part that "[a]ll relevant evidence is admissible"—is likewise misplaced, as neither Romero's departure from Transportes Juventino Rosas nor Cuellar's disposition is relevant to this case. Appropriately, Rule 402 concludes: "Evidence which is not relevant is not admissible."

[8] "The term 'deliberate ignorance' 'denotes a conscious effort to avoid positive knowledge of a fact which is an element of an offense charged, the defendant choosing to remain ignorant so he can plead lack of positive knowledge in the event he should be caught.'" *United States v. Wofford*, 560 F.3d 341, 352 (5th Cir. 2009) (quoting *United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990)).

[9] The district court instructed the jury as follows:

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise would have been [sic] obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. However, this does not lessen the government's burden to show beyond a reasonable doubt that the knowledge element of the crime has been satisfied.

challenges to jury instructions to determine whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Moreno*, 185 F.3d 465, 475–76 (5th Cir. 1999) (quotation marks omitted). We "must carefully examine the totality of the evidence" when determining whether the instruction was permissible, *Lara-Velasquez*, 919 F.2d at 952, and "must view the evidence and all reasonable inferences therefrom in favor of the government," *Moreno*, 185 F.3d at 476. Within this framework, "[t]he district court has broad discretion in fashioning the charge." *Id.*[10]

"This Court has consistently upheld deliberate ignorance instructions as long as sufficient evidence supports their insertion in the charge." *Lara-Velasquez*, 919 F.2d at 951. "The purpose of the deliberate ignorance instruction is to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." *Wells*, 262 F.3d at 465. Yet, because "a deliberate ignorance instruction creates a risk that the jury might convict for negligence or stupidity, *i.e.*, that the defendant should have been aware of the illegal conduct," *Wofford*, 560 F.3d at 352, "[t]he instruction is properly given only when the defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance," *Lara-Velasquez*, 919 F.2d at 951 (quotation marks and alterations omitted). Thus, "[t]he evidence at trial must raise two inferences: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant

---

This charge is consistent with deliberate ignorance instructions that we have upheld in prior cases. *See, e.g.*, *Lara-Velasquez*, 919 F.2d at 949.

[10] The government seeks plain error review of this issue. Romero undoubtedly opposed the inclusion of the deliberate ignorance instruction prior to the district court's distribution of the final proposed instruction to the parties. The record also reveals, however, that Romero did not object to its inclusion (as opposed to its form) after distribution. Assuming without deciding that Romero preserved his opposition to the instruction, we review for abuse of discretion.

purposely contrived to avoid learning of the illegal conduct." *Id.* "[T]he district court should not instruct the jury on deliberate ignorance when the evidence raises only the inferences that the defendant had actual knowledge or no knowledge at all of the facts in question." *Id.*

In this case, Romero undisputedly raised a lack of guilty knowledge in his defense. Thus, we first inquire whether the evidence permitted an inference that Romero was subjectively aware of a high probability of the existence of illegal conduct. We "permit[] a deliberate ignorance instruction only when the Government presents facts that support an inference that the particular defendant *subjectively* knew his act to be illegal and not when the Government presents facts that tend to support an inference that a reasonable person would have known the act to be illegal." *Id.* at 952. Within this test, "[s]uspicious behavior may be sufficient to infer subjective awareness of illegal conduct." *Wofford*, 560 F.3d at 353.

Such highly suspicious evidence was presented to the jury in this case. For example, Romero changed his story about the destination of the shoes multiple times—first suggesting they were a gift destined for a friend, then that he was delivering them to a cousin, and finally that they constituted a paid parcel for his company. Such inconsistent testimony supports the conclusion that Romero knew of the probability of illegal activity. Ample evidence also suggested that the story that he proposed at trial—that he was delivering a parcel as part of his job—was fabricated. Ramirez-Hernandez testified that Transporte Pegasos did not have a parcel delivery service. In addition, the shoe box lacked such traditional trappings of parcels as a label, recipient name and address, or sender name and address. Similarly, the shoes were destined only for "Sergio" in Dallas—an unlikely and suspicious target for a parcel delivery. The totality of the facts thus permitted an inference that Romero was subjectively aware of the high probability of illegal conduct.

We must next inquire whether the evidence raised an inference that Romero purposefully contrived to avoid learning that his conduct was illegal. We "have determined that the circumstances of the defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *Lara-Velasquez*, 919 F.2d at 952. In this case, the evidence presented to the jury showed overwhelmingly suspicious circumstances. Although Romero had years of experience in the busing and parcel industry, he did not inquire about suspicious circumstances regarding the shoe delivery. International shipments subject to United States customs are not conducted on a first-name only basis without contact or forwarding information, packing materials, or labels. Yet, Romero did not seek more information about the recipient or the sender despite the difficulty of finding a particular "Sergio" in Dallas or a particular "Juan" in Mexico. Thus, the evidence permits an inference that Romero purposefully contrived to avoid learning about the contents of the "parcel" he was delivering.[11]

---

[11] Although Romero relies on *United States v. Mendoza-Medina*, 346 F.3d 121 (5th Cir. 2003), our holding in that case is not to the contrary. There, the defendant was convicted for conspiracy to possess and for possession with intent to distribute more than fifty kilograms of marijuana after he hauled the drugs into the United States in his tractor-trailer. *Id.* at 127. Although the government did not request a deliberate ignorance instruction, the district court gave one *sua sponte*. *Id.* at 133. We held that the deliberate ignorance instruction was improper because "the evidence either indicates that [the defendant] knew about the drugs or that he did not, and does not suggest that he was deliberately ignorant to the scheme." *Id.* The "evidence of actual knowledge was [the defendant's] admission that he knew he was carrying drugs and the inference that he had done it [on a previous trip]." *Id.* at 134. "Unlike the case where the evidence supports an inference of either actual knowledge or a subjective awareness, such as nervousness upon being stopped by authorities, an admission indicates either that [the defendant] had actual knowledge or no knowledge at all, if the statement was coerced." *Id.* In that context, the fact that the defendant was asked by his employer to pick up the drug shipment in a trailer located at a gas station instead of a loading dock did not permit an inference of deliberate ignorance. *Id.* at 134. We nonetheless upheld the judgment of conviction because his admission was more than sufficient to support a conviction based on actual knowledge, rendering the error harmless. *Id.* Here, Romero did not admit his crime, and the evidence permitted the jury to conclude that he was deliberately ignorant.

Thus, because Romero's defense centered on his lack of knowledge of the content of the boots and because the government presented sufficient evidence indicating that his transport of the shoes was with, at minimum, deliberate ignorance, the district court did not abuse its discretion by instructing the jury on deliberate ignorance.

## D.  Cumulative Effect

Romero finally asks us to reverse the district court based on the cumulative effect of the purported errors in this case.  He has not sufficiently briefed how the cumulative error affected this case, so we are not inclined to grant his request.  *See United States v. Stevens*, 487 F.3d 232, 242 n.1 (5th Cir. 2007) ("Inadequately briefed issues are deemed abandoned.").  Moreover, as we have held above, the district court did not err; thus, his claim of cumulative error must fail.  *See United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of [the defendant's] arguments of error, his claim of *cumulative* error must also fail.").

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment of conviction.