EDITH BROWN CLEMENT, Circuit Judge,
dissenting:
The district court committed no reversible error, and the jury’s verdict should be affirmed. In holding otherwise, the panel majority ignores the substantial evidence supporting Delgado’s conspiracy conviction and reaches outside the issues presented on appeal and outside the law of this circuit. The panel majority falls back on a nebulous theory of cumulative error that treats three purported mistakes — each minor at best, and only one objected to below — as collectively depriving Delgado of her constitutional right to a fair trial. Its conclusion that the trial violated the Fifth Amendment is wholly untethered from our caselaw. The cumulative error doctrine applies only in the rare case in which errors “so fatally infect the trial that they violate[ ] the trial’s fundamental fairness.” United States v. Fields, 483 F.3d 313, 362 (5th Cir.2007) (quotation omitted). This court has never vacated a verdict for cumulative error on such weak grounds.
To fit this case into our cumulative error jurisprudence, the majority finds error where none exists and overstates the harm allegedly caused by each error it finds. The result is a decision that makes a muddle of this court’s prosecutorial misconduct, conspiracy, and cumulative error doctrines.

A. The facts

The majority’s analysis overlooks the overwhelming evidence of Delgado’s guilt, none of which she rebutted. The evidence showed that Delgado offered Vasquez $10,000 to commingle approximately 500 pounds of marijuana with a truckload of broccoli so that the drugs could be transported from the Rio Grande valley in Texas to a receiver in North Carolina. A taped conversation confirmed that, in order to disguise the nature of the shipment, Delgado asked Vasquez to prepare two bills of lading — one for North Carolina, where the marijuana was bound, and one for New York, where the broccoli was bound.
*713 In the same taped conversation, Delgado and Vasquez discussed, in guarded language that Vasquez explicated on the stand, the number of boxes of broccoli that would have to be opened to hold the marijuana; that the truck’s interior would have to be heated to melt off some of the ice in which the broccoli was packed, so that the increased weight of the marijuana would not arouse suspicion at a weigh station; and the possibility that the marijuana would be loaded at a different warehouse to avoid a run-in with Vasquez’s supervisor. The shipment was cancelled after, as Vasquez explained, “the person who was going to work with [Delgado]” — that is, the intended recipient — was arrested. Delgado called Vasquez to tell him that the shipment was off, that the bundles of marijuana were still in the cab of her truck, and that she was waiting until night to unload them and return them to an unnamed supplier.
Acting on this information from Vasquez, government agents went to Delgado’s securely fenced and gated property. Delgado eventually consented to a search. Consistent with Vasquez’s report, the agents found a tractor-trailer parked in the yard. Delgado told the agents that she did not have the keys to its locked cab; she claimed they were with the driver. (Albert Aguilar, Delgado’s driver, consistently testified that the keys to the tractor-trailer were either kept in the truck or given directly to Delgado, that he knew of only one set of keys, and that he did not have them at the time the agents searched the truck.) Delgado also told the agents she could not contact the driver because she did not have his telephone number. The agents eventually were able to open the tractor-trailer cab. In its sleeper berth, they found thirty-four bundles of marijuana, weighing 507 pounds. Delgado expressed no surprise at the discovery but denied knowing that the marijuana was in the cab. She blamed her “drivers,” whose “names” she claimed she could not recall. In fact, Delgado employed only one driver — Aguilar.
Around the time the cab was opened, another agent entered a room in which Delgado kept approximately ten large, threatening dogs chained to the walls. Inside a cabinet, he found a garbage bag filled with wrapping material that smelled of marijuana and held what appeared to be marijuana seeds and residue. Delgado expressed no surprise at this discovery, either; she told the agent that she thought the bags had been used to wrap potting soil. She also said they might have been placed in the house by a man named Peter, who worked for her. She told the agent she did not know Peter’s last name and did not have his contact information. In addition to the drugs, agents seized a substantial amount of ammunition and four firearms from Delgado’s residence, including a loaded TEC-9.[1] Vasquez testified that Delgado called him after the search and expressed her anger that the agents had seized the drugs and guns.

B. Sufficiency of the evidence

The panel majority’s holding that the evidence merely demonstrated a buyer-seller relationship and was not sufficient to show a conspiracy marks out new territory in our law on conspiracy. It is wrong for a number of reasons. Delgado did not raise the buyer-seller exception or challenge the sufficiency of the evidence at trial.[2] Nor *714 did she raise these issues on appeal. Her failure to challenge the sufficiency of the evidence on appeal waives the issue. United States v. Green, 964 F.2d 365, 371 (5th Cir.1992). In fact, while Delgado argued that the evidence of conspiracy was thin, she conceded in her opening brief that there was some evidence she worked with co-conspirators.
The majority’s expansive application of the buyer-seller exception is without precedent in this circuit. The evidence at trial demonstrated much more than just a buyer-seller scenario; substantial evidence allowed the jury to infer that Delgado was an integral part of a high-volume marijuana trafficking operation, not a participant in a “typical buy-sell scenario, which involves a casual sale of small quantities of drugs.” United States v. Medina, 944 F.2d 60, 65 (2d Cir.1991).[3] The majority’s contention that “there was no evidence from which a jury could rationally infer beyond a reasonable doubt that Delgado had agreed with anyone other than Vasquez ... to distribute or possess with intent to distribute marijuana” is factually incorrect. Maj. Op. at 698.
The evidence showed that Delgado arranged to ship more than 500 pounds of marijuana from the Rio Grande valley to a recipient in North Carolina. It also showed that she worked with a supplier who dealt in substantial quantities of the drug.[4] After the intended recipient was arrested but before the government agents interrupted her plan, Delgado reported to Vasquez that she was preparing to return the marijuana to the supplier. Delgado’s plan to return the 500-pound cache of drugs shows that she was not in a typical buy-sell relationship with her supplier. Another fact allows a similar inference that Delgado was a classic organizational trafficker rather than a mere buyer or seller: Delgado told Vasquez that prior to shipping the marijuana, she was waiting to be paid money — “which, in turn, she was going to use to pay us off once the marijuana had been loaded inside the boxes.” That Delgado was fronted money in advance takes this deal out of the realm of *715 the “typical buy-sell scenario.”[5] United States v. Hawkins, 547 F.3d 66, 72 (2d Cir.2008); see also United States v. Posada-Rios, 158 F.3d 832, 860 (5th Cir.1998) (holding that evidence that a defendant purchased drugs on consignment is “strong evidence of membership in a conspiracy because it indicates a strong level of trust and an ongoing, mutually dependent relationship.”). A mere buyer or seller is highly unlikely to deal in marijuana in quarter-ton increments, have an arrangement with her supplier whereby a significant amount of marijuana is freely returnable, receive money in advance of shipment, and construct an elaborate plan to ship the drugs across the country. As the majority recognizes, the buyer-seller exception “does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other [drug] transfers.” Maj. Op. at 694 (quoting United States v. Parker, 554 F.3d 230, 235 (2d Cir.2009)). Sufficient evidence existed for a rational jury to find that Delgado participated in a conspiracy. The majority’s characterization of the scheme strains credulity.
The majority cites a number of cases to support its theory.[6] It cites none with analogous facts, and nothing from this circuit supports its conclusion. Delgado’s able appellate counsel did not make a buyer-seller argument. The majority raises this waived argument sua sponte and in doing so, it has rewritten and greatly expanded this circuit’s approach to the buyer-seller exception.

C. Cumulative error

i. Prosecutorial misconduct

A key component of the majority’s cumulative error holding is a supposed instance of prosecutorial misconduct.[7] The kitchen-sink analysis undertaken by the majority — which appears to have discovered every variety of prosecutorial misconduct extant in our jurisprudence within the statement in question — is fatally flawed in at least two respects: it misreads the context of the statement and misapplies the substantive law.
This is what the prosecutor said at the end of his closing rebuttal:
Talk about motive to lie, ladies and gentlemen. Who has the motive to lie here? The driver? No. He’s working all around. Mr. Vasquez? No. He’s in Laredo. He’s not a permanent snitch. He’s not one of those individuals that makes his living off providing information. He’s provided it twice in the past. The agents? You’re going to blame the agents for all this? Whose [sic] got the motive to lie here? It’s the Defendant, and she’s done so. She did so to these agents.
*716 Defense counsel objected to the statement, noting that Delgado “has not testified ... in this case.” The judge sustained the objection. No curative instruction was requested, and none was given sua sponte, although the judge had instructed the jury-prior to the closing arguments that the lawyers’ statements did not constitute evidence.
The context is crucial to determining the effect of the statement.[8] The defense rested without putting on any witnesses. After the judge charged the jury, the prosecutor explained in his initial closing argument how Delgado’s conduct met each element of the charged offenses. There were no objections.
Defense counsel began his closing by acknowledging that “[tjhings look real bad for Ms. Delgado.” He accused two of the government agents of “just assuming] she’s guilty” and blamed Agent Spivey for suspecting that Delgado possessed the marijuana even though “[tjhere’s nothing done scientifically in this case.” At the same time, defense counsel attempted to paint Delgado as open and straightforward in her dealings with the government agents. He argued that the evidence indicated that Delgado’s “demeanor ... is, come on in. She unlocks everything. She shows them everything. So, nothing she’s holding back.” Delgado, he contended, “never had any reason not to let them see everything.... She didn’t hide anything.”[9] Defense counsel then shifted to an attack on the credibility of the government’s other witnesses. He suggested the possibility that “Mr. Vasquez is controlling” and that Delgado was being set up. He pointed out inconsistencies in Aguilar’s statements and hinted that Aguilar should have been considered a suspect.
In his rebuttal, the prosecutor addressed the defense’s arguments head-on. He specifically focused on the assertion that Delgado had been completely forthcoming with the federal agents. Delgado, he emphasized, cooperated in helping the government agents search every part of the property — with the notable exception of the tractor-trailer cab, the only locked item to which she claimed not to have the keys. The prosecutor then outlined for the jury Delgado’s dissembling statements about her truck driver and explained why the evidence showed that Delgado must have had the keys — the natural corollary being that she must have been lying to the federal agents about her access to the cab. It was after this explanation that he made the contested statement.
The majority’s conclusion that the prosecutor improperly vouched for Vasquez is incorrect. Defense counsel implied that Vasquez was behind the whole marijuana shipping operation and that his status as an informer called his veracity into question.[10] The prosecutor was completely *717 within his rights to challenge these insinuations by recalling for the jury evidence presented at trial: that Vasquez was “not one of those individuals that makes his living off providing information.” Prosecutors are not forbidden from “presenting] what amounts to be a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon ... [the government’s] witnesses.” United States v. Munoz, 150 F.3d 401, 414-15 (5th Cir.1998) (quotations omitted). In United States v. Gracia, this court specifically stated that prosecutors “may argue fair inferences from the evidence that the witness has no motive to lie.” 522 F.3d 597, 601 (5th Cir.2008). Nothing more was done here. The majority’s attempt to find improper vouching is misplaced.
Equally misplaced are the majority’s suggestions that the prosecutor related his personal opinion of Delgado’s veracity and — incredibly—insinuated that he was imparting private information to the jury. The context of the statement shows that, while the prosecutor should have chosen his words more carefully, the majority’s characterization of them is flawed. The prosecutor made the statement shortly after explaining to the jury how the evidence proved that Delgado, contrary to her protestations to the government agents, must have had the keys to the tractor-trailer cab. A reasonable jury would not have understood the prosecutor to be relating his personal opinion. As defense counsel correctly noted in objecting to the statement, Delgado’s character for truthfulness was not at issue because she had not testified. The prosecutor was not telling the jury that Delgado was a pathological liar. The thrust of the statement was that Delgado, and not the government witnesses whose veracity and motives her counsel called into question, was the one who made repeated attempts to shift the blame to others.[11]
One danger in prosecutorial statements vouching for a witness’s credibility is that the jury will understand the prosecutor to be imparting information not presented at trial. For example, the statement “trust me, I know for a fact that this witness is telling the truth” conveys to the jury that the prosecutor knows the defendant committed the crime, but was not able to get everything he knows into evidence.[12] For the same reason, prosecutors cannot make comments during closing argument that operate as evidence — that is, where the jury must rely on the comments because the government failed to present evidence supporting them at trial. See United States v. Allen, 588 F.2d 1100, 1108 (5th Cir.1979). “Nevertheless, the law remains that unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.” United States v. Windom, 510 *718 F.2d 989, 994 (5th Cir.1975) (finding no error in a prosecutor’s reference to a defendant as a “con artist”); see also United States v. Fields, 483 F.3d 313, 360 (5th Cir.2007) (holding that the defendant’s substantial rights were not affected when the prosecutor referred to him as a “psychopath” during closing argument).
When read in context, the statement here is emphatically not the kind of “a wink and a nod” argument from which a jury would understand the prosecutor to be conveying personal knowledge of the defendant’s guilt based on something other than the evidence presented at trial.[13] The opinion’s citation of the excoriating language in United States v. Anchondo-Sandoval, 910 F.2d 1234 (5th Cir.1990),[14] is especially inappropriate. In fact, Anchondo-Sandoval shows that the statement here was different in kind, not degree, from what the improper argument doctrine aims to prevent. The prosecutor in that case related to the jury, among other improper statements, the following: “I am going to tell you my feelings in this case— the defendant in this case is one of the most artful liars I have ever met.” Id. at 1237. In spite of this openly personal attack on the credibility of a testifying witness, the court affirmed the conviction. The case presents, in contrast with what was said at Delgado’s trial, a prime example of a “highly prejudicial injection of [a prosecutor’s] personal opinion.” Maj. Op. at 701. The majority’s equation of the prosecutor’s remarks here to those made in Anchondo-Sandoval exemplifies its misreading of the facts.
This is not to say there was no problem with the statement. It may have confused the jury, and the prosecutor’s clumsy language probably obscured the point he was attempting to make. The district court properly sustained defense counsel’s objection. And that was that: the statement was a minor stumble that neither merited nor received much attention from the court or either counsel. No limiting instruction was given because none was requested. The majority’s treatment of the statement as sufficient to undermine the entire trial or contribute to a cumulative error holding is a severe stretch.
Even assuming that the prosecutor’s statement is what the majority makes it out to be, under this court’s easelaw it does not come close to providing a sufficient basis for overturning the jury’s verdict. The question is whether, “taken as a whole in the context of the entire case,” the statement “prejudicially affect[ed the] substantial rights of the defendant.” United States v. Risi, 603 F.2d 1193, 1196 (5th Cir.1979) (quotation omitted). The court considers three factors in making this decision: “(1) the magnitude of the prejudicial effect of the prosecutor’s remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction.” United States v. Wyly, 193 F.3d 289, 299 (5th Cir.1999) (quotation omitted).
“If the evidence to support a conviction is strong, then it is unlikely that the defendant was prejudiced by improper arguments of the prosecutor and reversal is not required.” See, e.g., United States v. Casel, 995 F.2d 1299, 1308 (5th Cir.1993), *719 vacated on other grounds as to one defendant sub nom. Reed v. United States, 510 U.S. 1188, 114 S.Ct. 1289, 127 L.Ed.2d 644 (1994). The test is stringent: it places a “substantial burden” on defendants. United States v. Virgen-Moreno, 265 F.3d 276, 290 (5th Cir.2001). “A criminal conviction is not to be lightly overturned on the basis of a prosecutor’s comments standing alone. The determinative question is whether the prosecutor’s remarks cast serious doubt on the correctness of the jury’s verdict.” United States v. Neal, 27 F.3d 1035, 1051 (5th Cir.1994) (quotation omitted).
No doubt, let alone serious doubt, exists here. The statement was weakly prejudicial, if at all. The majority’s supposition that the jury could have relied on the statement alone to meet the statutory mens rea requirement is not credible, especially given the overwhelming evidence that Delgado knew exactly what was in the tractor-trailer cab.
The court must also examine the efficacy of any cautionary instruction given by the judge. The majority relies heavily on the lack of a sua sponte cautionary instruction. It is correct that the pre-closing-argument instruction informing the jury that “any statements, objections, or arguments made by the lawyers are not evidence” does not carry the same weight as a contemporaneous instruction. But under our precedent, the lack of a cautionary instruction does not count against the government. In United States v. Sanchez, the prosecutor made an improper statement implying that government employees are less likely to lie because of their official position. 961 F.2d 1169, 1176 (5th Cir.1992). As in this case, defense counsel objected, the court sustained the objection, defense counsel did not request a cautionary instruction, and none was given sua sponte. Looking at the second factor of the improper argument test, the Sanchez court explained that while no cautionary instruction was given, “[i]t is ... clear ... that none was requested. Thus, the second element of our test weighs neither in favor of nor against [the defendant].” Id.[15] The same result must obtain here: having failed to request a cautionary instruction, Delgado cannot escape conviction simply because the majority deems such an instruction necessary in retrospect.
That leaves only the third factor. As demonstrated above, the evidence of Delgado’s guilt is overwhelming.
Thus, even assuming that the statement was improper, not one of the three factors favors overturning the conviction.[16] Improper prosecutorial argument provides a weak peg on which to hang a finding of cumulative error.

ii Deliberate ignorance instruction

The majority’s cumulative error holding also relies on the trial court’s inclusion of a “deliberate ignorance” jury instruction. Delgado concedes that, because she did not object to the instruction at trial, the court should review for plain error — which the majority fails to do. See United States v. Fuchs, 467 F.3d 889, 901 (5th Cir.2006). *720 Under this court’s precedent, any error that may have occurred did not prejudice Delgado’s substantial rights.
A deliberate ignorance instruction is justified when the government presents evidence of the defendant’s “subjective awareness of a high probability of the existence of illegal conduct” and “purposeful contrivance to avoid learning of the illegal conduct.” United States v. Threadgill, 172 F.3d 357, 368 (5th Cir.1999). Even assuming arguendo that the instruction was not appropriate, any error was harmless under well-established Fifth Circuit caselaw. In ThreadgiU, the court held that the error in giving such an instruction in the absence of evidence of contrivance is “ ‘harmless where there is substantial evidence of actual knowledge.’ ” 172 F.3d at 369 (quoting United States v. Cartwright, 6 F.3d 294, 301 (5th Cir.1993)). The government put on substantial evidence of Delgado’s actual knowledge. It cannot be that the instruction “ran the high risk of allowing the jury to erroneously convict Delgado.” Maj. Op. at 709. The deliberate ignorance instruction comes nowhere close to reversible error. It provides yet another flimsy peg for the cumulative error holding.

iii Sears instruction

The majority also concludes that the district court erred by failing to sua sponte give a Sears instruction on the conspiracy charge. This is wholly irrelevant as the majority has determined that sufficient evidence did not support Delgado’s conspiracy conviction. In addition, the majority fails to acknowledge that Delgado neither requested, nor objected to the absence of, a Sears instruction. This court has stated that unobjected-to omissions of jury instructions “may be raised on appeal as plain error ... only in egregious instances.” United States v. Arky, 938 F.2d 579, 582 (5th Cir.1991) (quotation omitted). “To meet this standard, [the defendant] must show that the omission of the instruction was more than reversible error; he must show that it resulted in a grave miscarriage of justice.” Id. (quotation omitted).
It would have been better for the district court to provide a Sears instruction here, where the unindicted co-conspirators were described but not named, and where a substantial amount of the testimony against Delgado came from a government informant. But if the failure to sua sponte give the instruction did constitute error, the error was far from egregious and did not affect Delgado’s substantial rights. She never advanced the defense that she only conspired, if at all, with a government agent; her defense was based solely on the knowledge requirement. And the government did not assert that Delgado could be held liable for conspiring with Vasquez.[17] When discussing the elements of the conspiracy charge in his closing argument, the prosecutor told the jury that the trafficking conspiracy involved three people: the supplier of the drugs, Delgado, and the person to whom Delgado was to deliver the cargo. “[T]hat right there,” he argued, “shows you that she entered into an agreement with some other individuals to get this marijuana up north.” The lack of a Sears instruction did not impede Delgado’s defense.[18]
*721 In United States v. Slaughter, this court rejected a similar argument that a trial court erred by failing to deliver a Sears instruction. 238 F.3d 580 (5th Cir.2000). The court found Sears “distinguishable because the Government indicted and presented evidence at trial to establish a conspiracy existed which included Slaughter and five others who were not government agents or informants.” Id. at 585. Additionally, as here, the defendant “[did] not argue that the evidence was insufficient to establish the existence of the conspiracy charged in ... the indictment.” Id. The Ninth Circuit has twice rejected similar arguments for a Sears instruction: “Where a defendant does not offer a particular instruction, and does not rely on the theory of defense embodied in that instruction at trial, the district court’s failure to offer an instruction on that theory sua sponte is not plain error.” United States v. Montgomery, 150 F.3d 983, 996 (9th Cir.1998); see also United States v. Romero, 282 F.3d 683, 689 (9th Cir.2002) (same). The district court’s failure to provide the unrequested Sears instruction did not amount to plain error, much less result in the “grave miscarriage of justice” that our jurisprudence requires. Arky, 938 F.2d at 582.

in. Other grounds to support the cumulative error holding

As further support for its cumulative error holding, the majority mentions two additional purported problems. While it does not go so far as to call either an error, it significantly overstates their impact on the fairness of the trial. Both issues can be dealt with summarily.
Although the trial transcript does show a number of minor omissions, none was prejudicial to Delgado. Nothing in her appeal relates to the voir dire, and a review of the transcript shows that those proceedings are discernible and that there was no error in the district court’s handling of jury selection. All of Delgado’s objections and all of the court’s rulings are on the record. The scattered gaps in the record do not cast any doubt on the verdict.[19] The omissions did not prejudice Delgado and do not bolster an otherwise unjustifiable finding of cumulative error.
*722 The district court’s denial of a mistrial after the prejudicial and purportedly non-responsive testimony from Agent Spivey[20] was obviously not an abuse of discretion; the district court’s handling of the statement, late in the trial, was exemplary.[21] Even assuming that the remark was not invited and was prejudicial, there is no significant possibility that it had a substantial impact on the jury’s verdict. See United States v. Limones, 8 F.3d 1004, 1007-08 (5th Cir.1993). The court delivered an effective cautionary instruction, and the evidence that TJ Trucking was presently involved in drug trafficking was overwhelming. The jury would have had no reason to rely on Agent Spivey’s off-the-cuff remark in deciding to convict. Neither purported problem supports the court’s holding.

v. Cumulative error holding

Cumulative error justifies reversal only when errors “so fatally infect the trial that they violated the trial’s fundamental fairness.” Fields, 483 F.3d at 362 (quotation omitted).
A reviewing tribunal must consider each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose (including the efficacy — or lack of efficacy — of any remedial efforts); and the strength of the government’s case.
United States v. Sepulveda, 15 F.3d 1161, 1196 (1st Cir.1993). To support its holding, the majority relies primarily on the three purported errors discussed above. At best, it has identified two unobjected-to instances in which the jury instructions could have been improved, neither of which comes close to reversible error and one of which is irrelevant to the remaining charge. None of the three purported errors was more than weakly prejudicial, if at all. There are no serious errors to cumulate, and so the doctrine has no place. It is not meant to bootstrap a series of close calls or non-prejudicial errors into reversible constitutional error.[22]
Even assuming that errors occurred and that they were prejudicial, they do not clear the high bar this court has imposed on the use of a remedy of last resort. We have repeatedly emphasized that the cumulative error doctrine necessitates reversal only in rare instances.[23] Its application *723 is especially uncommon when the government presents substantial evidence of guilt.[24] The doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant’s constitutional right to a fair trial. That did not happen here. The purported errors were not interrelated, and the majority has not come up with a convincing argument that they were in any way synergistic or self-multiplying. Perhaps most tellingly, the majority has not cited a single instance in which this court — or any other — has reversed for cumulative error on such scattered and insubstantial putative errors.
This court has been careful to limit reversals for cumulative error because the doctrine is necessarily amorphous and context-specific. It serves as a judicial safety valve for trials so infected by unobjectedto or harmless error that the reviewing court lacks faith in the jury’s verdict. It was never intended to correct mere imperfection. The Federal Reporter is replete with cases in which we have declined to reverse for cumulative error, although some error did occur.[25] The cases in which we have reversed for cumulative error present strikingly different circumstances — the errors were either overwhelming or genuinely synergistic.[26] This *724 case is not just near the line. It is far from it, and the reversal here will be taken as a significant expansion of the doctrine.
CONCLUSION
The panel majority disregards the substantial evidence supporting Delgado’s conviction and substitutes its own judgment for that of the jury. Although Delgado never raised the buyer-seller exception or challenged the sufficiency of the evidence at trial or on appeal, the panel majority raises the issue sua sponte. In order to justify the result, the majority panel opinion significantly rewrites and expands this circuit’s buyer-seller exception.
Discussing the cumulative error doctrine in the habeas context, this court recognized that it “is an infinitely expandable concept that, allowed to run amok, could easily swallow the jurisprudence construing the specific guarantees of the Bill of Rights and determining minimum standards of procedural due process.” Derden v. McNeel, 978 F.2d 1453, 1457 (5th Cir.1992) (en banc). The majority’s decision is a manifestation of precisely that danger. Its holding that prejudicial errors occurred distorts this court’s prosecutorial misconduct and conspiracy doctrines. The majority also misapplies this court’s cumulative error jurisprudence by expanding the doctrine to cover unrelated weak or nonexistent errors. It is the rare trial that proceeds without a single miscue; “[a] defendant is entitled to a fair trial, not a perfect one.” United States v. Ragsdale, 438 F.2d 21, 28 (5th Cir.1971). Delgado’s trial was far from unconstitutionally unfair. The majority’s holding to the contrary will be read to cast doubt on the outcomes of similarly routine trials. I would affirm the jury’s verdict and must respectfully dissent.[27]

. Agent Spivey testified that the TEC-9 is a weapon of choice for many drug traffickers.

. Both her motion for a judgment of acquittal at the close of the government’s evidence and her counsel’s closing argument relied solely on her claimed lack of knowledge.
*714 Delgado also did not request a buyer-seller instruction at trial. Even if she had, such an instruction would not have been necessary. "We have consistently held that an adequate instruction on the law of conspiracy precludes the necessity of giving a buyer-seller instruction, even where the evidence supports the defense." United States v. Mala, 491 F.3d 237, 241 (5th Cir.2007). "So long as the jury instruction given by the court accurately reflects the law on conspiracy, this court will conclude that the buyer-seller relationship has also been adequately covered.” United States v. Asibor, 109 F.3d 1023, 1035 (5th Cir.1997); see also United States v. Thomas, 12 F.3d 1350, 1365-66 (5th Cir.1994). "We conclude that if the evidence showed that a defendant is merely a buyer or seller, the elements necessary to prove a conspiracy would be lacking, and a not guilty verdict would result.” United States v. Maseratti, 1 F.3d 330, 336 (5th Cir.1993). Here, the jury was properly instructed on the law of conspiracy; its guilty verdict shows that it did not consider the trafficking here to be a series of mere buyer-seller transactions.

. The Second Circuit's opinion in United States v. Parker contains a thorough explanation of the rationale behind the narrow buyer-seller exception. 554 F.3d 230, 234 (2d Cir.2009). As the Parker court notes, the exception, at its core, "distinguish[es] between transfer of an illegal drug and the acquisition or possession of the drug” by a street-level user. Id.; see also United States v. Ivy, 83 F.3d 1266, 1285-86 (10th Cir.1996) ("[T]he purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors....”).

. The government was not required to identify either co-conspirator by name. See United States v. Lance, 536 F.2d 1065, 1068 (5th Cir.1976).

. Additionally, the plan to ship the marijuana required advance logistical arrangements. The Second Circuit, for one, does not apply the buyer-seller exception "where ... there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use. Under such circumstances, the participants in the transaction may be presumed to know that they are part of a broader conspiracy.” Medina, 944 F.2d at 65-66; see also United States v. Cohen, 427 F.3d 164, 170 (2d Cir.2005).

. In particular, the majority relies on several cases from the Seventh Circuit, which employs a buyer-seller doctrine far more expansive than our own.

. The opinion could be read to hold in the alternative that prosecutorial misconduct alone justifies reversal. See Maj. Op. at 701.

. See United States v. Wyly, 193 F.3d 289, 299 (5th Cir.1999) ("The magnitude of the prejudicial effect is tested by looking at the prosecutor’s remarks in the context of the trial in which they were made and attempting to elucidate their intended effect.’’) (quotation omitted).

. In fact, the agents waited a significant amount of time before Delgado met them at the gate. She then insisted that only three agents be allowed onto the property. Before letting them enter her house, she left them on the doorstep without warning or explanation, went into the house, locked the door, and then emerged approximately ten minutes later, claiming that she had needed to use the bathroom. Several government agents testified that her behavior led to concerns about officer safety.

. The majority's attempt to draw a distinction between what Delgado's counsel insinuated about Vasquez — namely, that he may have been behind the whole trafficking operation — and an argument that Vasquez had affirmatively lied, makes little sense. If Vasquez was, as defense counsel suggested, the *717 "controlling'1 party, then everything he said on the stand was a lie.

. For this same reason, the portion of the majority’s argument based on Delgado’s exercise of her Fifth Amendment right not to testify is mistaken. See Maj. Op. at 698-99. The relevance of this line of argument is unclear, and a cursory glance at United States v. Beeks, 224 F.3d 741, 746 (8th Cir.2000), and United States v. Schuler, 813 F.2d 978, 981-82 (9th Cir.1987), shows that they have nothing at all to do with this case.

. See United States v. Leslie, 759 F.2d 366, 378 (5th Cir.1985) ("The test for improper vouching is whether the prosecutor’s expression might reasonably have led the jury to believe that the prosecutor possessed intrinsic evidence, not presented to the jury, that convinced the prosecutor of the defendant’s guilt.”); see also Gracia, 522 F.3d at 601-02 (holding that the prosecutor erred in making four remarks “uniquely within the prosecutor’s knowledge”).

. Nor does the majority have any fair basis for its assertion that the prosecutor "threw the weight of his own credibility as a representative of the United States behind his personal opinion." Maj. Op. at 701. The overstatement is palpable.

. “The use of such tactics is inexcusable and causes this Court to view with a jaundiced eye convictions obtained where such obviously inappropriate methods have been employed.” Anchondo-Sandoval, 910 F.2d at 1238.

. See also United States v. McDonald, No. 93-03198, 9 F.3d 102, 1993 WL 481450, at *1 (5th Cir. Nov. 1, 1993) (per curiam) (unpublished) ("Assuming that the comment was inappropriate, it was not prejudicial, considering that no curative instruction was requested and that there was overwhelming evidence of [the defendant's] guilt.”).

. This is especially obvious in light of Anchondo-Sandoval, in which this court affirmed the conviction despite the egregiously improper prosecutorial argument. The lone distinction in AnchondoSandoval is that the judge in that case gave a curative instruction — and under the holding of Sanchez, that distinction makes no difference when the defense fails to request one.

. The government did argue, quite accurately, that Delgado's conduct in arranging for the transportation of the marijuana was part of the conspiracy to move the drugs out of Texas, where their resale value would increase. It never asserted, though, that Vasquez was a conspirator.

. Additionally, the jury was accurately instructed on the law of conspiracy. Even if the addition of a Sears instruction would have *721 been optimal, it is unlikely that the jury, which we presume follows the court’s instructions, Zafiro v. United States, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), would have considered Vasquez a co-conspirator. The court instructed the jury that a conspiracy "is an agreement between two or more persons to join together to accomplish some unlawful purpose” and that it must find that "two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute a controlled substance.” The written jury charge included the additional instruction that a conspiracy "is a kind of ‘partnership in crime’ in which each member becomes the agent of every other member." It was abundantly clear from the evidence that Vasquez never had the requisite intent and that he was not Delgado’s "partner in crime.”

. Absent specific prejudice, we have found reversible error only where transcript omissions are "substantial and significant”- — -for example, when the record contained no transcript of the closing arguments; when it omitted voir dire proceedings, opening, and closing statements; and when there was no transcript at all. See United States v. Selva, 559 F.2d 1303, 1304 (5th Cir.1977); United States v. Gregory, 472 F.2d 484, 486 (5th Cir.1973); United States v. Rosa, 434 F.2d 964, 965 (5th Cir.1970). We have not found reversible error when a transcript was missing seventy-two bench conferences. See United States v. Gieger, 190 F.3d 661, 667 (5th Cir.1999); see also United States v. Aubin, 87 F.3d 141, 149-50 (5th Cir.1996) (holding that failure to transcribe nine bench conferences did not constitute reversible error). Here, unlike in Gieger and Aubin, the transcript contains insubstantial omissions, not large, substantial gaps.

. "Q: Did you all investigate I believe it was TJ trucking? A: We had prior knowledge of TJ Trucking being involved in narcotics trafficking, yes.” The answer was not obviously uninvited. There is no indication that Agent Spivey was trying to "work in” this information; he simply gave a broader response than was specifically asked for, as witnesses often do.

. The district court heard argument from counsel at a bench conference, decided that the answer was prejudicial but not wholly uninvited, and reasoned that a limiting instruction would cure any prejudice. The limiting instruction was thorough and delivered immediately following the bench conference.

. This court has also stated, in an unpublished opinion, that a defendant’s failure to sufficiently brief the manner in which cumulative error affected his case weighs against such a holding. United States v. Romero, 339 Fed.Appx. 470, 479 (5th Cir.2009); see also United States v. Kimbrough, 69 F.3d 723, 735 (5th Cir.1995) (“Kimbrough's current argument ... completely fails to specify how the cumulative effects of these events prejudiced him.”). Delgado's brief fails to do more than mention the doctrine as a catch-all remedy. It does not explain how the purported errors cumulated to affect Delgado's substantial rights.

. See United States v. Villarreal, 324 F.3d 319, 328 (5th Cir.2003) ("We have stressed, *723 however, that a reversal based on the cumulative effect of several alleged errors is a rarity.”); United States v. Reedy, 304 F.3d 358, 373 (5th Cir.2002) (same); United States v. Wicker, 933 F.2d 284, 292 (5th Cir.1991) (same); United States v. Lindell, 881 F.2d 1313, 1327 (5th Cir.1989) (same); United States v. Iredia, 866 F.2d 114, 118 (5th Cir.1989) (same).

. See United States v. Neal, 27 F.3d 1035, 1051-52 (5th Cir.1994) (”[W]e are not persuaded, in light of the substantial evidence of guilt adduced at trial, that the Defendants are entitled to reversal on the basis of cumulative error.”).

. See, e.g., United States v. Valencia, Nos. 08-20546, 08-20573, 600 F.3d 389, 2010 WL 809813, at *31 (5th Cir.2010) (rejecting cumulative error argument although the government erred in presenting evidence during its opening statement and in failing to timely notify defense counsel of its fee arrangement with an expert witness); United States v. Fields, 483 F.3d 313 (5th Cir.2007) (rejecting cumulative error argument although the district court incorrectly advised the jury venire about the grand jury’s findings and erroneously failed to assign reasons for physically restraining the defendant, and although the prosecution referred to the defendant as a “psychopath” in its closing statement); United States v. Ricardo, 472 F.3d 277, 287 (5th Cir.2006) (holding that "[wjhile there were errors in this case” — including at least one evidentiary error — they did "not provide a sufficient basis to warrant reversal.”); United States v. Wicker, 933 F.2d 284, 292 (5th Cir.1991) (rejecting cumulative error argument although the prosecutor made several improper comments); United States v. Cochran, 697 F.2d 600, 607-08 (5th Cir.1983) (rejecting cumulative error argument because two complained-of incidents, including an improper prosecutorial argument, did not occur on the same day and did not have an improper cumulative effect on the jury’s verdict); United States v. Stapleton, 65 Fed.Appx. 508, 2003 WL 1922956, at *6 (5th Cir. Mar. 28, 2003) (unpublished) ("[Ejven assuming that error is manifest in [the defendant’s] references to prosecutorial misconduct and the district court’s admission of extraneous offense evidence, these few instances of misconduct, taken together, simply do not yield a denial of the constitutional right to a fair trial'.”).

. See United States v. Riddle, 103 F.3d 423, 435 (5th Cir.1997) (reversing for cumulative error in light of improper expert testimony by a government witness, erroneous exclusion of defense expert testimony, erroneous admission of certain reports, improper admission of extraneous evidence, and improper admission of a memorandum associating defendant with numerous criminals and criminals scenarios); United States v. Labarbera, 581 F.2d 107, 110 (5th Cir.1978) (reversing for cumulative error in light of two improper cross-examination questions and an improper prosecutorial statement in which the prosecutor indicated *724 that he knew of incriminating evidence not before the jury); United States v. Diharce-Estrada, 526 F.2d 637, 642 (5th Cir.1976) (reversing for cumulative error in light of the trial court’s decision to start the trial in the evening after the jury members had waited a full day to begin, its improper opening remarks, which put undue pressure on the jury to reach a quick verdict, its disparaging remarks to defense counsel, its denial of defense counsel’s motion for acquittal in the presence of the jury, and the prosecutor’s improper closing argument).

. Like the majority, I take no position on Delgado's argument that her sentencing was flawed by the erroneous application of a two-level enhancement for a "leadership role.”