**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Horace Clifton JONES, a/k/a Buster Jones, Defendant-Appellant.**

No. 81–1275.

United States Court of Appeals, Fifth Circuit.

April 15, 1982.

Rehearing Denied May 18, 1982.

---

**4.** For reasons discussed in note 3, *supra,* this    holding is not contradicted by *Eldridge.*

Steven H. Swander, Fort Worth, Tex., for defendant-appellant.

Ronald C. H. Eddins, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before WISDOM, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Jones was convicted of causing a stolen motor vehicle to be transported in interstate commerce, 18 U.S.C. § 2312 (Count 1), and of receiving and concealing the motor vehicle in question, 18 U.S.C. § 2313 (Count 2). He was sentenced to four years' imprisonment on both counts, but his sentence on Count 2 was suspended. On his appeal, Jones attacks only the conviction on Count 1 (*causing* the interstate transportation of the stolen motor vehicle). His arguable contention in this regard is that the district court committed plain error by failing to give a cautionary instruction (although not requested to do so) against conviction upon the uncorroborated testimony of an alleged accomplice, who was a cooperating government witness.[1] Finding that, under the circumstances, the district court did not commit plain error by failing to give the accomplice instruction in the absence of request for it, we affirm.

*The Issue Before Us*

On the present record, little question arises that, after one Jordan (the alleged accomplice) had stolen a large tractor in Oklahoma City, Oklahoma, he brought the tractor directly to Jones in Fort Worth, Texas, who then had false bills of sale prepared for purposes of resale. For purposes of this appeal, it is essentially conceded that the evidence is open to the construction that Jordan brought the stolen vehicle directly to Jones in the expectation that Jones would buy or aid in the selling of a stolen vehicle. Nor for the present purposes do we reject Jones' argument that the circumstance that a thief may bring stolen goods to a dealer in them does not, by itself, prove that the dealer or "fence" instigated the theft and (in this case) the subsequent transportation of the stolen property across state lines.

On this appeal, Jones contends only that he was improperly convicted of *causing* the transportation of the stolen tractor from Oklahoma City to Fort Worth. That is, although Jones may have knowingly received the tractor *after* it was stolen, Jones notes that this does not by itself permit an inference that *before* the theft and delivery to him, he played any part in its theft or transportation across state lines. In this regard, Jones points out, the government's case is principally, if not entirely, based upon the testimony of Jordan, the alleged accomplice, as to the contents of private

---

1. Jones also contends that the evidence was insufficient to support conviction. However, if the trial jury accepted the testimony of the alleged accomplice, the evidence is plainly sufficient to permit the jury to find beyond a reasonable doubt that Jones induced the accomplice to steal the vehicle in Oklahoma *and* to transport it to Jones' place of business in Texas, by promising in advance of the theft to buy the vehicle when the accomplice brought it to him in Texas.

personal and telephone conversations between the two before and after the theft. Although the telephone company records do corroborate Jordan's testimony that the calls between the two did take place, the proof of the sinister *content* of the telephone calls depends upon the uncorroborated testimony of the accomplice Jordan. *See United States v. Beasley*, 519 F.2d 233, 241 (5th Cir. 1975). The evidence also shows that Jordan had been convicted of felony theft on five occasions other than the present incident, and a fair inference from the testimony is that Jordan was a professional thief of motor vehicles.

The defendant Jones contends that, under the circumstances, the trial court was required to give a cautionary instruction against placing too much reliance upon the testimony of an accomplice and to require corroborating testimony before giving credence to it, see *Tillery v. United States*, 411 F.2d 644, 647 (5th Cir. 1969), even though the defendant's counsel did not request this instruction.

*The Legal Principle Relied Upon*

The legal principle relied upon by the appellant Jones was summarized by us in *United States v. Nabrit*, 554 F.2d 247, 248–49 (5th Cir. 1977), as follows: "The failure to give an accomplice instruction may constitute plain error if the accomplice testimony is both uncorroborated and either incredible or unreliable, *United States v. Beasley*, 519 F.2d 233, 241 (5th Cir. 1975), vacated on other grounds, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976); *Tillery v. United States*, 411 F.2d 644 (5th Cir. 1969); *Williamson v. United States*, 332 F.2d 123 (5th Cir. 1964), or if evidentiary questions are so close as to require a cautionary instruction. *United States v. Windom*, 510 F.2d 989, 994 (5th Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 121, 46 L.Ed.2d 91 (1975); *United States v. Clark*, 480 F.2d 1249, 1254 (5th Cir.), *cert. denied*, 414 U.S. 978, 94 S.Ct. 301, 38 L.Ed.2d 222 (1973); *Davis v. United States*, 411 F.2d 1126, 1129 (5th Cir. 1969)."

Based upon these decisions, skillful counsel for the defendant Jones argues that whenever a conviction is essentially based upon the testimony of an accomplice—and either (1) that testimony is both uncorroborated *and* incredible or unreliable, *or* (2) the evidence as to guilt or innocence is close—"plain error" invariably results, unless the trial court (even in the absence of request) specially instructs the jury to receive such accomplice testimony with caution and to require corroboration of it. We do not read the jurisprudential principle enunciated by the cited decisions—only *Tillery* and *Williamson* of which in fact resulted in reversals—to apply with such stringency, although indeed plain error "*may*" result under such circumstances.

■ In the first place, the usual rule is that the failure of the district court to afford an instruction to the jury cannot be complained of on appeal in the absence of request or objection by counsel in the trial court. Rule 30 Fed.R.Cr.P.; 2 Wright, Federal Practice & Procedure § 484 (1969). Here, for example, reversible error would have occurred if the district court had refused counsel's request for the accomplice instruction, *see e.g., Dunn v. United States*, 318 F.2d 89 (5th Cir. 1963); and, in the ordinary course of criminal trial, one would expect experienced counsel to request such an instruction should it be thought desirable to have this express instruction to alert the jury to the potential unreliability of the accomplice Jordan's testimony—an instruction *additional* to those here given that *did* instruct the jury, in weighing credibility, to consider a witness's relationship to the government, whether he had testified falsely concerning a material fact, and whether his credibility had been impeached by a previous conviction. The general purpose of Rule 30 is to require counsel to afford the district court an opportunity to avoid error. 2 Wright, *supra*, § 484. In our opinion, the *Tillery* and *Williamson* "plain error" reversals were intended to remedy a potential substantial injustice under the facts of those particular cases, not to provide a general *per se* exception to the jurisprudential requirement that a trial request must be made for a jury instruction before the failure to give such may be the subject

of complaint on appeal. *Williamson* and *Tillery* were not intended to permit counsel, by knowing inaction, to trap a trial court into reversible omission of instruction.

█ In the second place, while Rule 52(b), Fed.R.Cr.P., permits reversal for "[p]lain errors or defects affecting substantial rights . . ., although not brought to the attention of the [trial] court," the failure to give an instruction in the absence of request for it may amount to plain error only in egregious instances, especially in view of Rule 30's unequivocal provision that such failure cannot be complained of on appeal in the absence of trial request or objection. That is, such a failure to give an accomplice instruction is not plain error simply because, if requested, the district court's failure to do so would have been reversible. When an appellant contends a failure to give an instruction was plain error, he "must demonstrate that the charge, considered as a whole" was so deficient "as to result in a likelihood of a grave miscarriage of justice," *United States v. Varkonyi*, 645 F.2d 453, 460 (5th Cir. 1981), or he must show "exceptional circumstances" where the "errors are obvious" or otherwise "seriously affect the fairness, integrity, or public reputation of judicial proceedings," *United States v. Adams*, 634 F.2d 830, 836 (5th Cir. 1981). *See also United States v. Thevis*, 665 F.2d 616 at 645 (5th Cir. 1982). "The sounder perception is that when an appellate court should take notice of error not raised below must be made on the facts of the particular case." 3 Wright, *supra*, § 856 at p. 373.

We thus do not read *Tillery* and *Williamson* as erecting an invariable *per se* rule of plain error whenever the accomplice instruction is not given under the circumstances found to be reversible *under the facts* of those cases. In *Williamson*, in finding plain error, the court reviewed the entire record and found that the criminal cast to the defendant bank cashier's otherwise innocent (if negligent) conduct was based *"entirely"* upon the alleged accomplice's testimony. 332 F.2d at 127. Likewise, in *Tillery*—where the defendant businessman had allegedly helped an admitted burglar in the burglary of a neighboring store and had thereafter participated in the burglar's interstate transportation of the stolen goods—the burglar's tainted testimony at the trial was the *only* direct evidence, 411 F.2d at 646, connecting the defendant with the burglar's illegal conduct.

█ We deduce from *Williamson, Tillery,* and the other decisions cited—not a rule mechanically requiring "plain error" reversal if certain criteria are met (*i.e.*, either uncorroborated plus unreliable testimony of the accomplice, or a close issue as to guilt)—but instead a principle that plain error *may* result under these circumstances if, on reading the record as a whole, the reviewing court is convinced that, under the particular facts, a substantial injustice may have resulted from the failure expressly to alert the jury to the danger of relying upon the testimony of the accomplice. As stated in *Tillery*, *"The failure to warn a jury about accomplice testimony is not reversible error in all instances. . . .* It is the better practice, however, to caution the juries against too much reliance upon the testimony of an accomplice and to require corroborating testimony before giving credence to such testimony. [Nevertheless,] "[t]he *warning is not an absolute necessity in all cases."* 411 F.2d at 647 (emphasis supplied).

We have recently stated that the *Tillery* plain error situation does not arise unless the accomplice's testimony is " 'incredible or insubstantial on its face,' " *United States v. Hinds*, 662 F.2d 362, 363, 371 (5th Cir. 1981). The generic situation contemplated by *Tillery* and *Williamson* is that, since a conviction may be sustained on the basis of the uncorroborated testimony of the accomplice (and therefore the court may not grant a motion for acquittal), the district court may be obliged to take special efforts to caution the jury against placing too much credence upon such uncorroborated accomplice testimony (1) where it is solely relied upon for conviction and (2) where there are strong indicia that the testimony of the accomplice may be a fabrication. For reasons to be stated, we do not find that, under the facts

of the present case, plain error in this sense resulted from the district court's failure to give a cautionary accomplice instruction.

*The Factual Context*

On the weekend of November 24–25, 1979, Jordan (the alleged accomplice) stole the tractor in Oklahoma City and loaded it onto a trailer hitched to his pick-up truck. On the following day, after Jordan drove directly with the tractor on the trailer to the defendant Jones' place of business in Fort Worth, certain papers (including false bills of sale) were filled out at Jones' direction. As earlier noted, the subsequent events undoubtedly amounted to corroborated proof that Jones knowingly received the stolen tractor (Count 2); but, as argued by the appellant Jones, this evidence as to post-delivery conduct by Jones does not (aside from the testimony of Jordan) necessarily constitute evidence that he had knowingly caused the *prior* interstate transportation (Count 1)—rather, this evidence proves only that he made efforts to conceal his post-delivery receipt of the stolen property.

To prove pretheft involvement by Jones—essential to proof of guilt under Count 1 that he had caused the interstate transportation of a stolen motor vehicle—the government did indeed rely principally upon the testimony of Jordan, the alleged accomplice, who had pleaded guilty and was a cooperating government witness. The issue is whether that testimony was so unreliable and so uncorroborated in the *Williamson-Tillery* sense as to require the trial court, without request for it, to give a cautionary instruction to the jury that expressly instructed it to require corroborating evidence before giving credence to questionable testimony of this nature. This issue arises, however, in the context of general instructions that were intended to alert the jury that, in weighing the putative accomplice Jordan's credibility, they could take into account any interest he himself might have arising out of his plea bargain with the government, as well as the reflection upon his truthfulness arising from his given prior felony-theft convictions.

As to Jones' pretheft involvement, Jordan testified as follows:

1. On November 9 (about three weeks before the theft), Jordan—in the course of purchasing a pick-up truck from Jones in Dallas—inquired if Jones would be interested in buying a tractor that Jordan had located in Oklahoma City. Jones replied that he was interested and that he would buy it or help Jordan sell it (for a commission), if Jordan brought it down.

2. At that time or later, Jones agreed to furnish Jordan a trailer to transport the tractor. The day before the theft, Jordan drove down to Fort Worth from Oklahoma City and picked up the trailer, returning it with the tractor after the theft. (At this point, we should note that, while Jordan did bring the trailer from Oklahoma City to Fort Worth, outside of his own testimony there is no evidence that, prior to that time, the trailer had ever been in Fort Worth on Jones' premises, or that it had been furnished to Jordan by Jones before the theft. To the contrary, the former Jones' employees—who were testifying as government witnesses and who displayed some resentment towards Jones—testified that they had never seen the trailer on Jones' various business premises *before* Jordan brought the trailer with the tractor to Fort Worth.)

3. Shortly before the theft, Jordan telephoned Jones from Oklahoma City and told him he had located the tractor. Jones agreed to pay Jordan five thousand dollars cash for the tractor when the latter brought it to Fort Worth.

■ In determining whether it was plain error under the present facts not to give the cautionary accomplice instruction, we first note that, unlike in *Tillery* and *Williamson*, the accomplice's unreliability here is not based on conflicting versions shifting the blame in the criminal incident or on cumulative pretrial and trial instances indicating error and confusion. *See, e.g., United States v. Beasley, supra,* 549 F.2d at 242–43. *See also United States v. Hinds, supra,* 662 F.2d at 370–71. Here, in the main, in his pretrial accounts the accomplice Jordan implicated Jones consistent with his

trial testimony, and the alleged discrepancies are not material insofar as Jones' involvement. The circumstance that Jordan is a five-time convicted felon is not the sort of unreliability "contemplated by *Williamson* and *Tillery* to elevate to plain error status a trial court's failure to instruct on accomplice testimony *sua sponte,*" *Beasley, supra,* 519 F.2d at 242, especially since the district court's instructions adequately instructed the jury relating to the effect of these prior convictions on the accomplice's credibility.

Nevertheless, we must admit that Jordan's most damaging testimony against Jones—that Jones had pretheft furnished him the trailer for his use in it—is open to strong imputations of fabrication, although consistent with Jordan's pretrial statements. The furnishing of the trailer is supported only by Jordan's uncorroborated and somewhat questionable testimony and is, if anything, contradicted by the testimony of all other witnesses who were questioned about the trailer, including the government's. We are left with the impression that this aspect of Jordan's consistent version of the incident may have been a fabrication designed to shield a friend who had furnished him the trailer in Oklahoma City, an implication well developed by the cross-examination of Jordan by Jones' able counsel.

Ultimately, however, we determine that, on the record as a whole, plain error did not occur in the *Williamson-Tillery* sense, not only because the other instructions given adequately under the circumstances cautioned the jury to consider carefully before acepting the five-times-convicted Jordan's testimony, but also because there is at least some slight objective corroboration to Jordan's version implicating Jones in pretheft association prior to the actual theft of November 25–26. The telephone company records of Jordan's Oklahoma City number show that he called Jones' numbers in Fort Worth three times on November 17 and again three times on November 23. The record reflects that Jordan had known Jones casually for about two years, but that their only prior transaction was Jordan's purchase of a pick-up truck on November 9, and it does not reflect any innocent reason for these frequent calls in the planning stages and just prior to the theft of the tractor in Oklahoma City. In the absence of any other reason suggested by the record, these frequent telephone calls to Jones by Jordan, a comparative stranger, immediately prior to the theft are by numbers (and disregarding their *content* as portrayed by the uncorroborated testimony of Jordan) sufficiently corroborative of Jordan's testimony to take the present facts out of the *Williamson-Tillery* plain error situation, where indeed the defendant was totally unconnected with the criminal enterprise except by the testimony of an accomplice shown to be of suspect reliability as to the accused's conduct or as to the content of conversations between him and the accused.

*Conclusion*

We therefore do not find that the factual circumstances before us indicate such unreliability and lack of corroboration that substantial injustice may have resulted from the district court's failure, in the absence of request, to give a cautionary accomplice instruction. While it may have been preferable to have done so, and while it would have been reversible not to have done so if requested, we cannot say that under the circumstances the instructions as a whole did not adequately instruct the jury to weigh with great caution the truthfulness of the accomplice's testimony. Accordingly, we AFFIRM the convictions.

AFFIRMED.