**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Louis A. ARKY, Defendant–Appellant.**

No. 90–2914
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 31, 1991.

**580**

Jim James, Bryan, Tex. (Court-appointed), for defendant-appellant.

James L. Turner, Paula C. Offenhauser, Asst. U.S. Attys., Stephen S. Morris, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PER CURIAM:

### I.

In 1984 and 1985, Arky and business partner Robert Baumstein attempted to take advantage of the depressed housing market in Houston. They purchased, at 70% of appraised value, 36 houses built by Gemcraft Homes. They arranged for straw buyers, who had good credit ratings, to apply for assumable Federal Housing Administration loans to purchase houses from Arky and Baumstein at full appraised value. A loan was for 95% of the purchase price when the straw buyer stated that he or she would occupy the house and 85% of the purchase price when the straw buyer stated that he or she would be a landlord. No straw buyer intended to occupy any of the houses. The straw buyers represented to HUD that they would pay all down payments and closing costs, knowing that Arky and Baumstein would provide such funds.

Immediately after taking title to a house, each straw buyer transferred the property back to Arky and Baumstein, who, in turn, sold it to the real buyer, who could not qualify for FHA financing but who assumed the FHA loan. The real buyer paid 100% of appraised value. Arky and Baumstein paid each straw buyer $2000 for using his or her good credit to obtain the loan. Arky and Baumstein took as profit the difference between the straw buyer's loan amount (85 or 95% of appraised value) and 70% of the appraised value, minus $2000 paid to the straw buyer and other expenses of closing.

Ultimately, HUD foreclosed on 29 of the properties and reported losses of $1 million. Arky and Baumstein were indicted for conspiring to make false statements to HUD in violation of 18 U.S.C. § 1010, which is a violation of 18 U.S.C. § 371 (Count I) and for making such statements in violation of 18 U.S.C. § 1010 (Count II). Baumstein pleaded guilty to Count 2 and Count 1 was dismissed as to him. He testified for the government at Arky's trial and was sentenced to serve two years in prison, the first four months to be spent in a community treatment facility and the last 20 months to be suspended for five years probation. Several straw buyers were put on pre-trial diversion and also testified for the government at Arky's trial.

At the trial, the court directed a verdict of not guilty on Count 2, and the jury found Arky guilty on Count 1. The district court entered judgment accordingly and sentenced Arky to serve two years in prison, to pay a $5000 fine, and to pay $10,000 restitution. Arky filed notice of appeal which, pursuant to Fed.R.App.P. 4(b), is treated as timely.

### II. Analysis

Arky raises five points of error on appeal. He argues that (1) the evidence was insufficient to support his conviction for conspiracy to violate 18 U.S.C. § 1010; (2) the evidence was insufficient to prove that

any conspiracy occurred within the applicable statute of limitations; (3) the trial court committed reversible error in not instructing the jury that they must find an overt act within the limitations period; (4) the trial court committed reversible error in failing to give "accomplice witness" instructions regarding the testimony of several of the witnesses; and (5) that the trial court erred in relying on the pre-sentence report's assessment of the government's loss caused by Arky's criminal acts. None of these objections have merit. We therefore affirm Arky's conviction.

## A. Sufficiency of the Evidence

■ Arky first argues that the government put on evidence that was insufficient to establish conspiracy to make false statements in connection with the FHA loans. This court weighs such an argument by reviewing the evidence "in the light most favorable to the government, so that all reasonable inferences and credibility choices support the jury's verdict." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The conviction must be affirmed if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir.1991).

The statute that Arky is charged with conspiring to violate, 18 U.S.C. § 1010, provides a criminal penalty for a person who, for the purposes of obtaining a HUD-insured loan, "makes, passes, utters, or publishes any statement, knowing the same to be false." 18 U.S.C. § 1010. Arky implies that the loan applications were always either truthful or left blank by the applicants. As no false statements were made, he argues, the conviction for conspiring to violate § 1010 is based on insufficient evidence.

Contrary to Arky's assertions, the record contains clear evidence that the straw buyers made false statements when applying for HUD-insured loans. On their loan applications, for instance, several straw buyers stated that they intended to occupy the houses that they were purchasing, when, in fact, they had no intention of occupying the houses. There was also testimony from some straw buyers that Arky told them what ought to be spent on the application forms. Moreover, Arky's ex-partner, Baumstein, testified that the straw buyers were instructed to make untrue statements on the application forms. Consequently, a reasonable juror could have found that Arky conspired with the straw buyers to make false statements in violation of 18 U.S.C. § 1010. The evidence was not insufficient.

## B. Statute of Limitations

■ Arky next raises two points of error based on 18 U.S.C. § 3282, the five-year statute of limitations. First, he asserts that the prosecution did not show that any overt act within the scope of the conspiracy took place within the limitations period. Second, he asserts that the trial judge committed reversible error in not instructing the jury that, in order to convict, they would have to find that an overt act occurred within the limitations period. We do not address the merits of these contentions, because we find that Arky waived these affirmative defenses by not asserting them at trial.

Arky asserts his defense based on the statute of limitations for the first time on appeal. Some courts have reasoned that the statute of limitations limits the court's subject-matter jurisdiction and that, therefore, objections based on the statute of limitations are noticeable for the first time on appeal. *See, e.g., Waters v. United States*, 328 F.2d 739, 743 (10th Cir.1964); *Benes v. United States*, 276 F.2d 99 (6th Cir.1960). This position, however, has been rejected by the majority of the circuits and commentators. *See, e.g., United States v. Karlin*, 785 F.2d 90, 92–93 (3rd Cir.1986); *United States v. Meeker*, 701 F.2d 685, 687 (7th Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Walsh*, 700 F.2d 846, 855 (2nd Cir.), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Williams*, 684 F.2d 296, 299 (4th Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 739,

74 L.Ed.2d 961 (1983); *United States v. Wild*, 551 F.2d 418, 424–25 (D.C.Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977); *United States v. Akmakjian*, 647 F.2d 12 (9th Cir.1981), *cert. denied*, 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1982). The Tenth Circuit seems to have abandoned its earlier position in *Waters* and to have adopted the position that "the statute of limitations is an affirmative defense which is waived unless raised at trial." *United States v. Gallup*, 812 F.2d 1271, 1280 (10th Cir.1987). *See also* 1 Wright & Miller, Federal Practice & Procedure § 193 n. 52 (2d ed. 1982).

This court has never explicitly held that limitations defenses may not be raised on appeal if not raised at trial. At the same time, we have long adhered to the position that such objections are affirmative defenses and not objections to jurisdiction. *Capone v. Aderhold*, 65 F.2d 130, 131 (5th Cir.1933). We now hold that the defendant must affirmatively assert a limitations defense at trial to preserve it for appeal. Logic as well as authority supports this position: if the limitations defense is not jurisdictional, as we held in *Aderhold*, then it is difficult to conceive why it alone, of all the defendant's affirmative defenses, should not be waived if not asserted at trial. Therefore, because Arky did not raise and develop his limitations defenses at trial, he is precluded from raising them now.

### III. Lack of Accomplice Instructions

■■■ Next, Arky argues that the district court committed plain error by not *sua sponte* giving a special instruction about the witnesses having been Arky's accomplices. Defense counsel did not request such an instruction or object to the instructions that were given. Such omission usually precludes raising the issue on appeal. Fed.R.Crim.P. 30; *United States v. Jones*, 673 F.2d 115, 118 (5th Cir.), *cert. denied*, 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982). The issue of the omission of such an instruction may be raised on appeal as "plain error" pursuant to Fed. R.Crim.P. 52(b), but only in "egregious instances." *Jones*, 673 F.2d at 119. To meet this standard, Arky must show that the omission of the instruction was more than reversible error; he must show that it resulted in a "grave miscarriage of justice." *Id.* (quoting *United States v. Varkonyi*, 645 F.2d 453, 460 (5th Cir.1981)).

Where an appellant challenges the omission of an instruction regarding accomplice testimony, the "plain error" standard may be met if such testimony was both uncorroborated and unreliable or if the issue of guilt is close. *Jones*, 673 F.2d at 119. In this case, each straw buyer's testimony was corroborated by Baumstein's testimony and by HUD loan documents that were put into evidence. Moreover, the evidence of guilt is overwhelming. The district court, therefore, committed no plain error.

### IV. Amount of HUD's Loss in Pre-sentence Report

■■■ Finally, Arky argues that the district court erred in finding, for sentencing purposes, that HUD's losses were $1,021,-670.00. The district court relied on the Presentence Report at page 3 for that amount.

The Presentence Report (PSI) stated that the figure came from "information in the United States Attorney's file." Arky objected to the figure as being unverified. The probation officer responded that HUD had provided the figure, which reflected the "expense cost and market loss" that HUD had incurred as a result of foreclosure on 29 houses sold in the scheme. The district court explained that it relied on the figure because it had "no reason to dispute it."

A pre-Guidelines sentence within the statutory limit may be challenged by alleging and proving that the sentencing court was "influenced by impermissible motives or incorrect information." *United States v. Stovall*, 825 F.2d 817, 826 (5th Cir.), *amended on other grounds*, 833 F.2d 526 (1987). Arky's sentence is within the five-year statutory limit. 18 U.S.C. § 371; Arky does not challenge the district court's motives in imposing this sentence. He complains only that HUD's information is

unverified. Such a complaint that the figure is incorrect is a mere assertion. that offers no proof. We therefore reject Arky's challenge to the trial court's assessment of the damage incurred by HUD.

For the reasons set forth above, the judgment of the district court is AFFIRMED.