# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2013

No. 10-50856

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOHN THOMAS SHIPLEY,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:09-CR-1867

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant John Thomas Shipley was convicted at trial of illegally dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) (count one), causing a firearms dealer to maintain false records in violation of 18 U.S.C. § 924(a)(1)(A) (counts two through five), and making a false statement in a matter within the jurisdiction of the federal government in violation of 18 U.S.C. § 1001(a)(3) (count six). In this appeal, Shipley contends

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that his convictions should be set aside for a number of reasons: the transcript for one day of the eight-day trial is missing, thus frustrating adequate appellate review; there was insufficient evidence at trial to support the convictions; the statute criminalizing conduct that causes a lawful firearms dealer to maintain false records should be declared unconstitutionally void for vagueness; the district court abused its discretion in excluding a witness's testimony relating to Shipley's good character and in refusing to instruct the jury on such character evidence; and, the government's prosecutor made improper statements at trial. He also contends that the district court's order forfeiting his interest in certain firearms and ammunition seized by the government should be reversed. We affirm.

## I.

This case involves unlawful dealing in firearms. Under federal law, individuals may not deal in firearms without first receiving a license. Individuals without licenses may make periodic sales of firearms from their personal collections, although they may not engage in the regular business of dealing firearms for profit. When a purchaser buys a firearm from a lawfully licensed dealer, both the dealer and the buyer must record the transaction with a Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, a transaction record form that dealers are required by law to keep. The form requires the purchaser to provide certain personal information and to certify that he is the "actual buyer" of the firearm. In other words, the purchaser must certify that he is buying the firearm for himself, not for an unnamed person. Federal law also requires licensed dealers to maintain "Acquisition and Disposition" ("A&D") record books, which are also used to record information about transactions.

The evidence presented at trial showed that Shipley was a Federal Bureau of Investigations agent who collected firearms as a hobby between 1996 and 2005. In early 2005, Shipley sold a substantial portion of his collection to finance the costs of a child adoption he and his wife were attempting. Although Shipley

never received a license to deal in firearms, those sales, being limited sales from his personal collection, were lawful. Shortly after that, however, Shipley, despite not having a license, began dealing in firearms as a regular side business to supplement his lawful income as an FBI agent.

The investigation into Shipley began as an investigation into someone else, Luis Armando "Mando" Rodriguez, a deputy sheriff in El Paso, Texas, who was suspected of illegally sneaking high-powered firearms into Mexico. American federal government agents traveled to Mexico to examine weapons recently seized by the Mexican military after a shootout that resulted in one person's death. The agents traced one of the weapons, a Barrett .50 caliber rifle, to a lawful firearms dealer in Missouri that had sold the firearm to Shipley. The agents contacted Shipley to try to obtain further information about how the firearm had eventually landed in Mexico. Shortly after the agents made contact, Shipley ordered two new A&D books. Over the course of a few telephone conversations between Shipley and an investigating agent, Shipley stated that he had sold Rodriguez the rifle that was used in the shootout in Mexico as well as two other firearms. Shipley offered his assistance in the investigation and volunteered his records for the agent's review. Several days later, Shipley and the agent met in person and Shipley handed over voluntarily an A&D book with four pages of recorded sales, including the three sales to Rodriguez that Shipley had told the agent about. The book purported to cover the entire period from 1996 to the present. Shipley told the agent that the book reflected all sales he had made during the relevant period.

Several months later, federal agents searched Shipley's residence and motor vehicles. During the search, agents uncovered a second A&D book. Compared to the one Shipley had turned over, this one, which also purported to cover the same period from 1996 to the present, was pages longer and listed a number of additional sales, including the sale of armor-piercing and incendiary ammunition. The government analyzed this newly discovered book and the one

previously handed over. According to the government's expert, the shorter book was written in a single sitting and with the same pen, and the longer book was written over numerous sittings and with different pens. The search also uncovered on Shipley's home computer additional records covering approximately twenty-two firearms sales as well as photographic images and email correspondence relating to firearms transactions. The agents found a number of firearms, several of which were not mentioned in either of the A&D books and many of which were mass-produced firearms of similar make and model that, according to testimony at trial, were not likely to be part of a personal collection. Also uncovered were hundreds of bullets, thousands of dollars in cash, and a number of postal-service records and other items tending to indicate that Shipley had been sending firearms through the mail.

Following an eight-day trial, Shipley was convicted on all six counts of the indictment. The district court sentenced him to two years' imprisonment and three years' supervised release.

## II.

Shipley contends that he should be granted a new trial because the transcript of proceedings in the district court is missing the testimony from a full day of trial, thus frustrating adequate appellate review. In this circuit, if "a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal," *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir. 1977) (*Selva II*) (footnote omitted), unless the district court can reconstruct "a 'substantially verbatim account of the proceedings,'" *United States v. Pace*, 10 F.3d 1106, 1123 (5th Cir. 1993) (quoting *United States v. Selva*, 546 F.2d 1173, 1174 (5th Cir. 1977) (*Selva I*)). Here, following a limited remand to the district court to attempt to reconstruct the record, the district court considered evidence and other party submissions during two days of hearings. Those hearings resulted

4

in a reconstructed record that the district court found constituted a substantially verbatim account of the proceedings. "[A]bsent a showing of intentional falsification or plain unreasonableness," the district court's finding as to the accuracy of the reconstructed record "is conclusive." *United States v. Margetis*, 975 F.2d 1175, 1177 (5th Cir. 1992); *see also United States v. Mori*, 444 F.2d 240, 246 (5th Cir. 1971). Because there has not been a showing of intentional falsification or plain unreasonableness, we accept the district court's findings and we further conclude that the record is sufficient for appellate review.

### III.

Shipley contends that insufficient evidence was presented at trial to support his convictions, which is an issue we review *de novo*. *See United States v. Ragsdale*, 426 F.3d 765, 770 (5th Cir. 2005). We "will affirm the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *Id.* at 770-71.

### A.

The first count of conviction, count one, was for unlicensed firearm trafficking in violation of 18 U.S.C. § 922(a)(1)(A), under which it is "unlawful . . . for any person . . . except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." To be "engaged in the business" of "dealing in firearms" means, "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal

5

collection of firearms." *Id.* § 921(a)(21)(C). The statute further defines the term "with the principal objective of livelihood and profit" to mean "that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.* § 921(a)(22). To determine whether the defendant unlawfully engaged in the business of firearms dealing, as so defined, the jury "must examine the intent of the actor and all circumstances surrounding the acts alleged to constitute engaging in business." *United States v. Tyson*, 653 F.3d 192, 201 (3d Cir. 2011) (citation omitted). The evidence at trial showed that Shipley did not have a license and that he nevertheless engaged in a regular course of dealing firearms for profit for a number of years, and that evidence was sufficient to support the jury's verdict. Shipley's primary argument for why this result should not follow is that he presented evidence at trial showing that, contrary to the government's contentions and evidence, his firearms transactions actually caused him to suffer a net loss. The jury, however, was entitled to disbelieve that evidence. Furthermore, a conviction requires that the defendant had the "principal objective" of making a profit, but it does not require that he succeeded in that endeavor. Accordingly, the jury's verdict was rational and we will not set it aside.

## B.

Counts two through five charged Shipley with causing a firearms dealer to maintain false records in violation of 18 U.S.C. § 924(a)(1)(A), under which it is unlawful to "knowingly make[] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter," which includes the Form 4473s that dealers must use to record customers' purchases. The counts against Shipley involve four separate instances in which he purchased a firearm, certified on the Form 4473 that he was the "actual buyer" of the firearm, and then turned

6

around almost immediately and sold the firearm to a third party. During the time relevant to this case, Form 4473 asked in question 11.a.:

> Are you the actual buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.

The form further explained:

> Actual Buyer: For purposes of this form, you are the actual buyer if you are purchasing the firearm for yourself or otherwise acquiring the firearm for yourself (for example, redeeming it from pawn/retrieving it from consignment, firearm raffle winner). You are also the actual buyer if you are legitimately acquiring the firearm as a gift for a third party.

> ACTUAL BUYER EXAMPLES: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is NOT the actual buyer of the firearm and must answer 'no' to question 11.a. The licensee may not transfer the firearm to Mr. Jones.

And, directly above the signature line that Shipley signed, the form contained the following certification and warning:

> I certify that the answers to Section A are true and correct. . . . I understand that answering 'yes' to question 11.a if I am not the actual buyer of the firearm is a crime punishable as a felony.

The evidence at trial was sufficient to support the jury's finding that Shipley was not in fact the "actual buyer" of the firearms but was rather buying them for the purpose of transferring to the true purchaser that had already been lined up or would soon be lined up, and thus, his statements on the forms were knowingly false and were illegally made. *See United States v. Johnson*, 680 F.3d 1140 (9th Cir. 2012) (affirming convictions under § 924(a)(1)(A) for falsely certifying on Form 4473s that the defendant was the "actual buyer" and then turning around and reselling the firearms). We decline to set aside these convictions.

## C.

Lastly, count six charged Shipley with making a false statement in a matter within the jurisdiction of the federal government in violation of 18 U.S.C. § 1001(a)(3), under which it is unlawful for a person to, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . make[] or use[] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry."  The material falsity may be a willful omission of information.  *United States v. Wright*, 211 F.3d 233, 238 (5th Cir. 2000); *see also United States v. Mattox*, 689 F.2d 531, 533 (5th Cir. 1982) ("Silence may be falsity when it misleads.").  Here, the evidence at trial showed that Shipley provided to federal agents an A&D book purporting to represent his only firearms transaction records while he actually maintained a second A&D book showing far more transactions, thus masking the true extent of his dealing, and such evidence was sufficient to support the jury's verdict.

## IV.

Next, Shipley contends that, even if there is sufficient evidence to support the conviction under count one, for unlicensed firearm trafficking, the conviction should be vacated because the statutes defining the offense and certain relevant terms, 18 U.S.C. §§ 921(a)(21)(C), (a)(22), and 924(a)(1)(A), are unconstitutionally vague.  "We review whether a statute is void for vagueness *de novo*."  *United States v. Monroe*, 178 F.3d 304, 308 (5th Cir. 1999).

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  A statute is not unconstitutionally vague when it is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest."  *Broadrick v.*

*Oklahoma*, 413 U.S. 601, 608 (1973).  However, "one who has received fair warning of the criminality of his own conduct from the statute in question is [not] entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.  One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  *Parker v. Levy*, 417 U.S. 733, 756 (1974). "[E]ven if the outermost boundaries of [the statute] may be imprecise, any such uncertainty has little relevance . . . where [the defendant's] conduct falls squarely within the 'hard core' of the statute's proscriptions." *Broadrick*, 413 U.S. at 608.

Although it may be true that there is a degree of ambiguity in locating precisely the border between, on the one hand, an unlicensed dealer that unlawfully engages in the regular business of dealing firearms and, on the other hand, an unlicensed hobbyist that lawfully engages in periodic sales, the jury here found Shipley guilty of making, over a number of years, numerous repetitive sales in quick succession, sometimes to repeat customers, and such conduct is unquestionably prohibited by the statutes' text.  Shipley's void-for-vagueness claim is therefore without merit.

## V.

Shipley argues that the district court erred in excluding from evidence the testimony of Enrique Moreno, one of Shipley's witnesses, relating to Shipley's good character.  "[W]e review the district court's ruling regarding the exclusion of character evidence against an abuse of discretion standard." *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990).  "Rarely and only upon a clear showing of prejudicial abuse of discretion will appellate courts disturb the rulings of trial courts in the admissibility of character evidence." *United States v. Davis*, 546 F.2d 583, 592 (5th Cir. 1977).

"A defendant may introduce character testimony to show that the general estimation of his character is so favorable that the jury may infer that he would

not be likely to commit the offense charged." *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Evid. 404(a)(2)(A) (allowing criminal defendants to "offer evidence of the defendant's pertinent trait"). "[E]vidence of a person's character . . . may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405.

Here, the district court found that Moreno did not have sufficient familiarity with Shipley to offer an opinion about his character, as the two had limited interaction for only a brief period, nor did Moreno have sufficient knowledge of Shipley's reputation in the community to testify on that matter either. The district court also found that the limited probative value of the character evidence was sufficiently outweighed by danger of confusing the issues and wasting time, *see* Fed. R. Evid. 403, because allowing Moreno's testimony would have opened the door to further examination regarding the relations between him and Shipley, a matter divorced from the central issues at trial. We do not believe that the district court abused its discretion.

Because the district court did not abuse its discretion in excluding the character evidence, it also did not err in declining to give the jury an instruction regarding the jury's consideration of character evidence. *See John*, 309 F.3d at 303 ("A character instruction is warranted only if the defendant first introduces admissible character evidence.").[1]

## VI.

Shipley's final argument regarding the validity of his conviction is that certain comments made by the prosecutor during trial were improper and warrant a new trial. Because Shipley did not object to the comments at trial, we review for plain error. *United States v. Gracia*, 522 F.3d 597, 599-600 (5th Cir. 2008).

---

[1] We do not construe Shipley's testimony at trial to have been character evidence since it neither discussed his reputation in the community nor purported to be an opinion of his own character.

"This court's review of an assertion of prosecutorial misconduct takes place in two steps. First, we must initially decide whether or not the prosecutor made an improper remark. If an improper remark was made, we must then evaluate whether the remark affected the substantial rights of the defendant." *United States v. Gallardo-Trapero*, 185 F.3d 307, 319 (5th Cir. 1999) (citations omitted). Overturning a jury verdict for prosecutorial misconduct is appropriate only when, "taken as a whole in the context of the entire case," the prosecutor's comments "prejudicially affect[ed] [the] substantial rights of the defendant." *United States v. Risi*, 603 F.2d 1193, 1196 (5th Cir. 1979). We consider "the magnitude of the prejudicial effect of the statement, the efficacy of any cautionary instruction, and the strength of the prosecution's evidence." *United States v. Crooks*, 83 F.3d 103, 107 (5th Cir. 1996).

First among the numerous statements Shipley complains of are several references to one of the firearms Shipley sold having been found in Mexico, at the scene of a shootout. Those statements related to evidence that was presented at trial, and the evidence was relevant. We do not find plain error warranting reversal here. Second, Shipley complains that certain statements made during the prosecutor's closing statements were improper appeals to passion or prejudice that were calculated to inflame the jury. We disagree and find no plain error. Third, Shipley contends that the prosecutor improperly vouched for the credibility of the government's witnesses. We read the trial transcript differently and find no statements plainly vouching for any witness's credibility. In sum, we do not believe that any of the challenged statements were improper ones sufficient to warrant reversal under plain error review.

## VII.

Shipley contends that the forfeiture order contained in the district court's written judgment should be reversed for three separate reasons. The first is that the district court did not give an oral forfeiture order at sentencing. The Federal Rules of Criminal Procedure provide that, "in advance of sentencing," "[i]f the

11

court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture," and then, "[a]t sentencing," "the preliminary forfeiture order becomes final as to the defendant." Fed. R. Crim. P. 32.2(b)(2)(A), (b)(2)(B), and (b)(4)(A). The rules further provide that the district court must "include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing." Fed. R. Crim. P. 32.2(b)(4)(B). We, however, will reverse a court for failing to include the forfeiture when orally announcing the sentence only if the defendant shows "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (alteration and citation omitted). Here, Shipley has shown no such reasonable probability.

Second, Shipley contends that the criminal forfeiture commenced outside the legal time limitations. Under 18 U.S.C. § 924(d)(1), "[a]ny action or proceeding for the forfeiture of firearms or ammunition shall be commenced within [120] days of [the] seizure." Shipley, however, did not raise this argument in the district court. *See United States v. Arky*, 938 F.2d 579, 582 (5th Cir. 1991) ("[T]he defendant must affirmatively assert a limitations defense at trial to preserve it for appeal."). If there was error, it was not plain.

Lastly, Shipley contends that there was not a nexus between his forfeited firearms and ammunition and the counts of conviction. Under the Federal Rules of Criminal Procedure, "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Here, the government sought and obtained a court order finding such a nexus, and Shipley did not object. Because there was sufficient evidence in the record for the district court to so find, we do not believe there was any error, let alone plain error.

**\* \* \***

We AFFIRM.