**REVISED December 22, 2014**
# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2014

Lyle W. Cayce
Clerk

————

No. 14-10119

————

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAVID KEVIN LEWIS, also known as David Shane Lewis, also known as "DW",

Defendant - Appellant

————

Appeal from the United States District Court
for the Northern District of Texas

————

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:

David Kevin Lewis challenges his convictions for one count of conspiracy to commit securities fraud and twenty-three counts of securities fraud. For the following reasons, we AFFIRM the convictions.

## I.   BACKGROUND

David Kevin Lewis was indicted alongside co-defendant Bruce Kyle Griffith on one count of conspiracy in violation of 18 U.S.C. § 371 and twenty-three counts of securities fraud and aiding and abetting in violation of 15 U.S.C. §§ 77q(a), 77x, and 18 U.S.C. § 2. Thomas Markham, another co-defendant, was indicted on one count of conspiracy.

No. 14-10119

Lewis and Griffith co-founded Always Consulting, Inc. ("ACI"), after meeting at a halfway house in 2003. Lewis had previously been convicted of securities and mail fraud in connection with oil and gas offerings. Griffith had several prior convictions, including convictions for bank robbery. Lewis served as chairman and director of field operations of ACI, and testimony at trial established that he was generally in charge of running the company. Although Griffith served as President and CEO, Lewis hired and fired all personnel at ACI. While Griffith was the signatory on all of ACI's accounts, Lewis had to approve all checks. Further, Lewis was responsible for training all of ACI's sales force. Markham was the chief—and only—geologist at ACI.

ACI sold interests in the Rattlesnake Springs Drilling Program—an oil and gas drilling project on the Osage Indian Reservation in Oklahoma—to members of the public. ACI offered thirty-five units of interest in the program at a cost of $100,285.71 per unit, for a total of $3,509,999.80. These interests were sold to the public by two groups of salespeople: fronters and closers. Fronters made the initial contact with investors through cold calls; closers handled the later contacts to convince potential investors to buy an interest in the project. Lewis wrote the scripts used by the fronters and closers. These scripts contained several misrepresentations. For example, they stated that there was already pipeline infrastructure for the Rattlesnake Springs Program in place, when in reality such pipeline infrastructure was not in place. Lewis also provided the ACI salespeople with "Do Not Call" lists containing the names of suspected undercover regulators. Furthermore, ACI falsely told investors that investments would be used only for the Rattlesnake Springs wells, and that ACI had special connections within the Osage Nation in Oklahoma, where the mineral leases were supposed to be located.

The case against Lewis was brought to trial in August 2013. Griffith, who had previously agreed with the Government to testify against Lewis in

No. 14-10119

exchange for the possibility of a reduced sentence, testified that Lewis prepared the offering memorandum that became the center of the Government's case at trial. Markham provided additional support for this assertion, testifying that Griffith lacked the knowledge of the oil and gas industry to have prepared it. The offering memorandum was sent out to investors, via interstate carriers. Griffith testified that it contained many assertions that were false. For example, Griffith testified that the offering memorandum falsely stated that he had been in the oil and gas industry since 1985, when he really had at most eight months of experience. The offering memorandum also stated that ACI was profitable, when in reality, it was not. Furthermore, the offering memorandum falsely stated that ACI had already secured millions of dollars of funding for the project. Crucially, the offering memorandum did not disclose Lewis's, Griffith's, or Markham's prior criminal convictions.

The indictment contained twenty-three counts of fraud for twenty-three individual investors; however, only five testified at trial. The testifying investors all stated that, had they known of Griffith's lack of experience or Lewis's and Griffith's criminal histories, they would not have invested with ACI. For the non-testifying investors, the Government entered into evidence each of their checks and the signature page of their participation agreements. Lewis testified in his own defense, asserting that he was a mere employee and that he resigned his management role within ACI in 2004 when he found out that Griffith intended to sell interests in ACI's oil and gas projects to the public. Lewis also testified that he had no involvement with orchestrating the Rattlesnake Springs Drilling Project. In rebuttal, the Government introduced a document, identified as GX115, dated September 5, 2006. GX115 purported to remind employees that Lewis was going to hold a meeting that Friday and

3

"every Friday going forward."  The document indicates that Lewis had a supervisory role over the salespeople at ACI.

On September 4, 2013, the jury found Lewis guilty on all counts.  The district court denied Lewis's motion for a judgment of acquittal and for a new trial.  Lewis timely appealed the denial of the motion for judgment of acquittal.

## II.    DISCUSSION

### A. Sufficiency of the Evidence

Lewis challenges the sufficiency of the evidence presented at trial to support his convictions for both conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and those counts of his substantive securities fraud conviction for which the named victim did not testify, in violation of 15 U.S.C. §§ 77q(a), 77x.

### 1.  Standard of Review

This court reviews "de novo the district court's denial of a properly preserved motion for judgment of acquittal." *United States v. Fuchs*, 467 F.3d 889, 904 (5th Cir. 2006).  We review a challenge to the sufficiency of the evidence supporting a conviction by reviewing "all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Harris*, 740 F.3d 956, 962 (5th Cir. 2014) (internal quotation marks omitted).  In determining whether there is sufficient evidence to support a verdict, "this court asks only whether the jury's decision was rational, not whether it was correct." *United States v. Rodriguez*, 553 F.3d 380, 389 (5th Cir. 2008).  We must accept "all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (internal quotation marks omitted).  "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every

conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Fuchs*, 467 F.3d at 904 (internal quotation marks omitted).

## 2. Securities Fraud Counts

Lewis argues that there was insufficient evidence to convict him of securities fraud on the counts for which the government did not call the victim-investor: counts 3–4, 6, 8–15, 17–18, 20–22, and 24 (the "Challenged Counts"). More specifically, he argues that there was insufficient evidence to prove that he had any contact with the investors in those counts of the indictment. He also argues that, because none of the investors in the Challenged Counts testified, there was insufficient evidence to prove that the scheme to defraud had an impact on those investors. As explained below, viewing the evidence in the light most favorable to the guilty verdict, we find that there was sufficient evidence for a "rational trier of fact [to] have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Harris*, 740 F.3d at 962.

In order to prove securities fraud, the Government must show: (1) the offer or sale of securities; (2) "by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly," and (3) one of the varieties of fraudulent conduct in the statute.[1]  15 U.S.C. § 77q.  This court has previously established that "[s]pecific

---

[1] They are:

> (1) to employ any device, scheme, or artifice to defraud, or

> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

reliance by the investor" on the fraudulent scheme or fraudulent statements need not be shown. *United States v. Ashdown*, 509 F.2d 793, 799 (5th Cir. 1975). Rather, the Government must show that the defendant's scheme had "some impact . . . on the investor and that the mails were used in those instances where the impact occurred." *Id.* (quoting *United States v. Schaefer*, 299 F.2d 625, 629–30 (7th Cir. 1962)). In *Ashdown*, we held that the mailing of stock certificates or confirmations of purchase in the mail was sufficient evidence to show an impact of the scheme on investors. *Id.* However, in *Ashdown*, unlike here, each victim-investor testified that he or she was "influenced either by the misleading shareholder literature, including the annual report, or by [one of the co-defendant's] representations." *Id.*

Lewis argues that there was insufficient evidence to prove that he had ever promoted the Rattlesnake Springs offering to the non-testifying investors. Accordingly, he asserts that the Government failed to prove that the scheme to defraud had an impact on the investors in the Challenged Counts. He explains that the decision to invest could have been prompted by ACI's fronters or closers, thus, indirectly arguing that the Government has failed to prove that he was responsible for having an impact on the decision to invest by the investors in the Challenged Counts. However, we have never held that the testimony of all the investors is required to meet the "some impact" standard set by *Ashdown*. For example, in a case involving the federal wire fraud statute, we held that there was sufficient evidence to support a conviction where the victim-investor did not testify. *See United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005). The investor's testimony was held not to be

---

> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a)(1)–(3).

necessary because the defendant typed the investor's participation agreement, the investor wired money that was not used for investments as promised, and "lulling payments" were made to the investor. *Id.*

In this case, there is sufficient evidence connecting Lewis to the investors in the Challenged Counts from which the jury could reasonably have concluded that Lewis's fraudulent statements had "some impact" on the investors in the Challenged Counts, even without their testimony. Griffith testified that Lewis substantially authored the offering memorandum, which was sent to investors. The offering memorandum contained many of the material omissions and misrepresentations underlying the charges, including: Griffith's inflated experience in the oil and gas industry, the omission of Lewis's, Griffith's, and Markham's prior criminal convictions, the statement that ACI was profitable, and the statements about ACI's access to the money needed to drill oil wells. Further, Griffith testified that Lewis wrote the scripts that the fronters and closers used when calling all of the investors. These scripts also contained material omissions and misrepresentations, including that there was already pipeline infrastructure for the Rattlesnake Springs project in place. This evidence shows that Lewis had contact, albeit indirectly, with the investors in the Challenged Counts and also supports a finding that he acted with intent to defraud them. Given that the "jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses," *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012) (internal quotation marks omitted), it is not our role to credit Lewis's testimony over Griffith's testimony.

Furthermore, a reasonable jury could infer that the misrepresentations and material omissions contained in the offering memorandum, especially the omission of Lewis's conviction for securities fraud in connection with oil and gas interests and Griffith's conviction for bank robbery, had "some impact" on the decision of the investors in the Challenged Counts to invest, even without

their testimony at trial. This inference is bolstered by the testimony of the investors that they would not have invested had they known about Lewis's securities fraud conviction and Griffith's bank robbery conviction. Further, although there is no direct evidence in the record that each of the investors in the Challenged Counts received the offering memorandum, we are to "view all evidence, whether circumstantial or direct, in the light most favorable to the government." *Grant*, 683 F.3d at 642 (internal quotation marks omitted). The record reflects that there was evidence that the memorandum was sent to investors generally. Moreover each of the testifying-investors testified that he or she received the memorandum. Therefore, the jury could reasonably infer that each of the investors in the Challenged Counts received the offering memorandum and that its misrepresentations and omissions had "some impact" on his or her decision to invest with ACI. Accordingly, we hold, after accepting all "reasonable inferences made by the trier of fact which tend to support the verdict," *Moreno-Gonzalez*, 662 F.3d at 372, that there was sufficient evidence to convict Lewis of the Challenged Counts.

### 3. Conspiracy

In order to prove conspiracy under 18 U.S.C. § 371, the Government must prove: "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010) (internal quotation marks omitted). Lewis argues that there was conflicting testimony as to who was in charge of ACI—Griffith or Lewis. Although Daisey Hillenbrand, a Government witness, testified that Griffith was in charge of the ACI office, other witnesses, including Griffith, Markham, and Toby Engleman, testified that Lewis was in charge. Nevertheless, this argument is irrelevant

because whether Lewis was in charge or not, he still "may be convicted of a conspiracy even if he only played a minor role." *United States v. Daniels*, 723 F.3d 562, 575 (5th Cir. 2013). Moreover, in a challenge to the sufficiency of the evidence, this court accepts "all credibility choices . . . which tend to support the verdict," *Moreno-Gonzalez*, 662 F.3d at 372, and must view the evidence "in the light most favorable to the verdict," *Fuchs*, 467 F.3d at 904. We therefore hold that a rational jury could reject the testimony of Hillenbrand and credit the testimony of Griffith, Markham, and Engleman.

After reviewing the record, we find that there was sufficient evidence for a rational jury to find that Lewis knowingly conspired with his co-defendants to defraud the investors in the Challenged Counts. There is a multitude of evidence to support the jury's finding that Lewis had made an overt act in furtherance of the conspiracy—particularly, Griffith's testimony that Lewis drafted the offering memorandum. Moreover, Lewis admits that the investors who were called at trial by the Government testified to Lewis's involvement in the Rattlesnake Springs Project. Accordingly, we find that there was sufficient evidence to convict Lewis of conspiracy to commit securities fraud.

## B. Government's Exhibit 115

Lewis argues that his convictions should be reversed because the district court abused its discretion by admitting Government's Exhibit 115 ("GX115") under the business records exception to the hearsay rule. For the following reasons, we conclude that the admission of GX115 was not reversible error.

### 1. Standard of Review

This court reviews evidentiary rulings for abuse of discretion. *United States v. Heard*, 709 F.3d 413, 422 (5th Cir. 2013). A district court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Soza*, 513 F.3d 194, 200 (5th Cir. 2008). Error is not grounds for the reversal of a conviction unless

it affects the defendant's "substantial rights." Fed. R. Crim. P. 52(a). "An error affects substantial rights if there is a reasonable probability that the improperly admitted evidence contributed to the conviction." *Heard*, 709 F.3d at 422 (internal quotation marks omitted).

### 2. Discussion

Lewis argues that GX115 contains hearsay within hearsay, and no exception was cited for the second level of hearsay. He further argues that GX115 is so unreliable as to be unworthy of consideration by the jury. After considering the record, we hold that, assuming without deciding that it was error to admit GX115, Lewis's substantial rights were not affected. GX115 appears to be an internal communication reminding ACI employees about a weekly meeting that Lewis was going to hold. The Government explains in its briefing that it offered GX115 to rebut Lewis's testimony that while he was an employee of ACI, he was not in charge of the company. However, there was other documentary evidence that tended to rebut Lewis's claim that after 2004 he was a mere employee. The Government introduced the minutes from a meeting held on June 14, 2005, which state that Lewis and Griffith called the meeting. Furthermore, Lewis's signature is the first one on the last page of these minutes. The Government also introduced the ACI Employee Handbook (Revised February 10, 2006), which lists Lewis as Chairman of ACI. Further, the Government introduced into evidence a resolution of the directors of ACI adopted by unanimous consent and dated August 4, 2006, which Lewis signed as a director. These pieces of evidence are highlighted to show that there was already ample documentary evidence to establish that Lewis still played a significant role in ACI after 2004. Since "[i]t is well established that error in admitting evidence will be found harmless when . . . substantial evidence supports the same facts and inferences as those in the erroneously admitted

evidence," *United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011), the evidence discussed above supports our conclusion that any error was harmless.

Furthermore, it is difficult to see how GX115 was particularly persuasive. It is unclear whether GX115 is a letter, memorandum, or email; to whom it was sent; or if it was ever sent at all. Given the limited testimony about the exhibit, and the limited information provided by the exhibit itself, we conclude that there is not a reasonable probability that GX115 contributed to Lewis's conviction. Accordingly, any error in admitting GX115 was harmless because Lewis's substantial rights were not affected. *See Heard*, 709 F.3d at 422.

## C. Statute of Limitations

Lewis argues that 18 U.S.C. § 3301, which extended the applicable statute of limitations from five years to six, is a violation of the Constitution's prohibition of ex post facto laws. U.S. Const. art I, § 9, cl. 3. He also indirectly argues that the statute's extension of the applicable statute of limitations should not be applied retroactively because it lacks an explicit retroactivity provision. We do not address these arguments because we hold that Lewis waived his affirmative statute of limitations defense by not "asserting [it] at trial." *United States v. Arky*, 938 F.2d 579, 581 (5th Cir. 1991).

Lewis raised his statute of limitations defense for the first time in his post-conviction motion for acquittal. Although we have clearly held that a defendant waives his statute of limitations defense if he raises it for the first time on appeal, *id.*, we have not squarely addressed whether a statute of limitations defense can be asserted for the first time in a post-conviction motion for judgment of acquittal. However, we have previously determined that a statute of limitations defense is an affirmative defense that must be "affirmatively assert[ed] . . . *at trial* to preserve it for appeal." *Id.* at 582 (emphasis added). This is because defenses such as a statute of limitations

defense will, in many cases, turn on disputed factual issues. If defendants were allowed to raise a limitations defense after a conviction, the prosecution would be prevented from introducing evidence to rebut the defense. *Cf. United States v. Cook*, 84 U.S. 168, 179–80 (1872) (explaining that the rationale for requiring the statute of limitations defense to be raised at trial is to allow the prosecutor to present evidence in order to rebut the defense). By requiring a defendant to "raise and develop" his statute of limitations defense at trial, *United States v. Solomon*, 29 F.3d 961, 964 (5th Cir. 1994) (citing *Arky*, 938 F.3d at 581–82), the prosecution will have a chance to rebut the defendant's arguments with evidence of its own. Although the facts surrounding Lewis's statute of limitations defense are not in dispute, this does not change our conclusion that a rule requiring all defendants to "affirmatively assert a limitations defense at trial to preserve it for appeal," *Arky*, 938 F.3d at 582, is preferable to a case-by-case determination. Such a case-by-case determination would leave defendants without a clear rule as to when a statute of limitations defense must be raised.

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

12